338 S.E.2d 375

**Wilma Mae LUSK, and Paul Lusk**

v.

**John DOE.**

No. 16637.

Supreme Court of Appeals of
West Virginia.

Dec. 17, 1985.

G. David Brumfield, Welch, Robert M. Worrell, Pineville, for appellants.

Jack A. Mann, Beckley, for appellee.

McGRAW, Justice:

This is an appeal by the plaintiffs in the underlying action, Wilma Mae Lusk and Paul Lusk, her husband, from an order of the Circuit Court of Wyoming County entered on March 29, 1984, sustaining a motion to dismiss sought in behalf of the unknown defendant below, denominated as John Doe. The basis for the circuit court's dismissal was its conclusion that the plaintiffs had failed to comply with a statutory prerequisite to the bringing of a "John Doe" action as provided in West Virginia's uninsured motorist coverage provisions.

The pertinent circumstances leading up to this appeal are as follows. On the afternoon of March 25, 1982, the appellant, Wilma Mae Lusk, was involved in an accident while operating a motor vehicle on a public highway near Herndon in Wyoming County. There were no passengers in the car. According to Mrs. Lusk, she was sideswiped by a coal truck coming in the opposite direction, causing her to lose control of her car and wreck. The identity of the owner or operator of the truck that caused the accident has never been determined.

At the time of the accident, the appellants had complete automobile insurance coverage, including uninsured motorist coverage, with State Farm Mutual Automobile Insurance Company. Accordingly, the appellants instituted a "John Doe" action in the Circuit Court of Wyoming County pursuant to West Virginia Code § 33–6–31 (Supp.1985), and served a copy of the complaint and summons upon their insurance carrier, State Farm. In behalf of "John Doe," the insurance company filed an answer and motion to dismiss, denying liability on the part of "John Doe" and asserting that the appellants were barred from recovery due to failure to comply with the notice provisions contained in the uninsured motorist statute. The insurance company, as an additional bar to recovery under the appellants' uninsured motorist coverage, also denied there was "physical contact" between the appellants' vehicle and the unknown vehicle.

Pursuant to the motion to dismiss filed in behalf of the appellee, the circuit court held a hearing to determine whether the appellee was entitled, as a matter of law, to have the appellants' complaint dismissed. At the hearing the court received testimony and other evidence from both sides concerning the accident and the events which followed.

■ We note that although the circuit court's disposition of the action below was pursuant to a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, the court's final ruling on the appellee's motion was made after an evidentiary hearing where matters outside the pleadings were made part of the record for consideration. In such a case, the court should treat the motion as one for summary judgment under Rule 56. *See* W.Va. R.Civ.P. 12(c); *West v. National Mines Corp.,* 168 W.Va. 578, 285 S.E.2d 670, 674 (1981); *see also* Syl. pt. 2, *Chapman v. Kane Transfer Company,* 160 W.Va. 530, 236 S.E.2d 207 (1977); *Wilfong v. Wilfong,* 156 W.Va. 754, 756, 197 S.E.2d 96, 98 (1973); *Barker v. Traders Bank,* 152 W.Va. 774, 778, 166 S.E.2d 331, 334 (1969). Accordingly, we will review the circuit court's disposition of the appellee's motion under the guiding standard that, "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty & Surety Company v.*

*Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

The appellant, Wilma Mae Lusk, testified in the circuit court hearing that, on the afternoon of March 25, 1982, upon rounding a blind curve near Herdon she encountered a large coal truck coming from the opposite direction in her lane. She stated that she attempted to avoid a head-on collision and that the two vehicles nevertheless "scraped metal," causing her to lose control of her car and run off the road, coming to rest in an adjacent creek. Mrs. Lusk further testified that she received substantial head and facial injuries and was immediately taken to a hospital, where she remained for approximately eight days.

Mrs. Lusk's sister-in-law, Martha Coffman, testified that on the day following the accident she went to the office of the Lusks' State Farm agent and reported the accident; that Mrs. Lusk had been injured; and that no one knew the identity of the owner or driver of the truck that forced Mrs. Lusk off the road. Eugene Lusk, brother of the appellant, Paul Lusk, also testified at the hearing. He testified that on the Sunday following the accident he visited Mrs. Lusk in the hospital and, based upon information given by her, filled out a Department of Motor Vehicles (DMV) accident report form and had her sign it.

The appellant, Paul Lusk, testified that he went to the insurance agent's office the following Monday to provide information concerning the accident, and was told to return on Tuesday, the day the insurance adjuster made his regular visit to the agent's office. Mr. Lusk stated that he returned the next day and talked with the agent and the adjuster. He testified that he was asked by the agent whether there was actual physical contact between the car driven by his wife and the coal truck, and in response stated, "I told him I wasn't there, I wasn't for sure about it, but the wife says there was contact." Mr. Lusk also testified that earlier on the same Tuesday he made a photocopy of the completed

(DMV) accident report and took the original to the insurance agent's office, where the agent filled in the required insurance information. Mr. Lusk stated that he mailed it to the Department of Motor Vehicles in Charleston on the same date. A copy of the DMV accident report was admitted as evidence in the hearing below.

In support of the motion to dismiss the insurance company called Iris Belcher, an employee of the insurance agency, who confirmed that the day following the accident she filled out a claim report based upon information given to her by Mrs. Coffman. The claim report was introduced and admitted into evidence. In response to questioning, Iris Belcher stated that her inscription on the report, "No P.D.," meant to her that no other vehicle was involved in the accident. Later in her testimony, when asked why she marked down on the form "No P.D.," she replied that she specifically recalled asking Mrs. Coffman whether there had been physical contact between vehicles and that Mrs. Coffman had said she didn't know.[1]

Glen McKinney, the appellants' insurance agent testified that neither of the appellants nor anyone in their behalf ever reported that there had been physical contact between the Lusk vehicle and the unidentified truck. He further testified that he was not notified by the appellants, within sixty days of the accident, of a potential claim under their uninsured motorist coverage. The insurance adjuster for the agency also testified that he could not recall any reference being made concerning a possible uninsured motorist claim before July of 1982. Finally, the insurance company submitted an affidavit dated June 10, 1983, of the Director of the Safety and Enforcement Division of the West Virginia DMV, stating that an examination of the DMV records indicated that no report concerning the accident was on file as of that date.

On March 29, 1984, the circuit court entered an order sustaining the motion to dismiss filed in behalf of the appellee, John

---

1. The record is silent as to how Ms. Belcher concluded that no other vehicle was involved based upon the above-stated response.

Doe. The circuit court concluded that because both appellants were named insureds under their automobile policy, Paul Lusk's failure to report the accident within twenty-four hours was fatal to the maintenance of the "John Doe" action brought under the provisions of West Virginia Code § 33–6–31(e) (Supp.1985).

This appeal presents questions involving the construction and application of certain provisions of West Virginia Code § 33–6–31 (Supp.1985), which, in substantial part, concerns uninsured motorist coverage and the procedures to be followed when an injury to person or property is precipitated by an uninsured driver. Subsection (b) of this statute requires that every motor vehicle liability insurance policy issued in this State "contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle," of no less than certain specified monetary limits. The statute also sets out certain requirements to be followed when suing an uninsured owner or operator when, ultimately, the injured party or parties intend to rely upon their own uninsured motorist coverage. Most notably, the statute requires that one bringing suit against an uninsured defendant have copies of the summons and complaint served upon their own uninsured motorist insurance carrier. The insurance company is thereafter entitled to file pleadings and defend the action in the name of the uninsured defendant, whether the identity of such defendant is known or unknown.[2]

When the cause of action is against an unknown ("hit and run") motorist, the proper procedure, as done in the instant case, is to institute a "John Doe" action pursuant to subsection (e)(iii) of West Virginia Code § 33–6–31. The purpose of the "John Doe" action, insofar as the uninsured motorist statute is concerned, is to establish liability of the unknown owner or operator and the amount of damages recoverable against the injured party's insurance carrier. In order for the insured to recover from the insurer, upon trial it must also be shown that the injuries were incurred after physical contact with the hit and run vehicle.

Subsection (e) of West Virginia Code § 33–6–31 also contains two separate notice provisions applicable to "hit and run" situations. First, subsection (e)(i) provides for notice of the "hit and run" accident to either the police or the Department of Motor Vehicles. Second, subsection (e)(ii) provides for notice to one's insurance company of the existence of a cause of action for damages against the owner or operator of the absconding vehicle.[3] In the answer and motion to dismiss filed below by State Farm in behalf of "John Doe," the insurance company asserted that the appellants had failed to comply with both notice provisions in West Virginia Code § 33–6–31(e), and were thereby barred from maintaining the action.

█ The circuit court did not cite, as a basis for the dismissal, a failure to comply with the 60-day notice of claim provision of subsection (e)(ii). This prerequisite to re-

---

**2.** *See* West Virginia Code § 33–6–31(d) & (e)(iii) (Supp.1985).

**3.** West Virginia Code § 33–6–31(e)(i) & (ii) provide:

(e) If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured be unknown, in order for the insured to recover under the uninsured motorist endorsement or provision, shall:

(i) Within twenty-four hours after the insured discover, and being physically able to report the occurrence of such accident, the insured, or someone in his behalf, shall report the accident to a police, peace or judicial officer, or to the commissioner of motor ve-

hicles, unless the accident shall already have been investigated by a police officer; and

(ii) Notify the insurance company, within sixty days after such accident, that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unknown and setting forth the facts in support thereof; and, upon written request of the insurance company communicated to the insured not later than five days after receipt of such statement, shall make available for inspection the motor vehicle which the insured was occupying at the *time of the accident....*

covery under the policy involves an issue of material fact in this instance, since Mr. Lusk's statement to the insurance agent to the effect that his wife said there was another unknown vehicle involved, if found to have been made, would be sufficient notice of a "cause or causes of action arising out of such accident for damages against a person or persons whose identity is unknown...." West Virginia Code § 33-6-31(e)(ii) (Supp.1985). We are not persuaded by the insurance company's apparent argument that subsection (e)(ii) requires a formal "legalistic" notice couched in the language of the statute.

■ The circuit court's dismissal of the action was based upon the conclusion that the suit was barred due to the appellant Paul Lusk's failure to comply with the notice-to-authorities provision under subsection (e)(i). We disagree and reverse.[4]

The circuit court's narrow construction of the language of subsection (e)(i) of the uninsured motorist statute contravenes the intended objective of the uninsured motorist statute. The primary, if not sole purpose of mandatory uninsured motorist coverage is to protect innocent victims from the hardships caused by negligent, financially irresponsible drivers. The particular provision in question stipulates that in a "hit and run" situation, "in order for the insured to recover under the uninsured mo-

---

**4.** Although not raised by the parties in the instant case, we note that the notice provisions of West Virginia Code § 33-6-31(e) affect only the contractual relationship between an insured and insurer. They are not intended to inure to the benefit of a presently unknown tortfeasor. The language of subsection (e) clearly stipulates that the notice provisions are prerequisites only "to recover *under the uninsured motorist endorsement or provision"* of the insured's policy. A "John Doe" action against an unknown motorist, whether or not it is brought under the uninsured motorist provisions of West Virginia Code § 33-6-31, remains an action in tort. The right to sue an uninsured motorist exists independent of the uninsured motorist statute. The statute merely provides a procedure to be followed when one seeks to recover from one's own insurer. If for no other reason, an injured victim has a right to file and maintain a "John Doe" suit to avoid having the action barred by the statute of limitations while endeavoring to ascertain the tortfeasor's identity. *See, e.g., Munoz v. Purdy,* 91 Cal.App.3d 942, 154 Cal.Rptr. 472 (1979); *Lunn v. American Maintenance Corp.,* 96 Nev. 787, 618 P.2d 343 (1980); *Miletta v. Doe,* 158 N.J. Super. 550, 386 A.2d 897 (1978).

Virginia's statutory uninsured motorist provisions are very similar to our own. *See* Va. Code § 38.1–381(b) to (j) (Supp.1985). In *Doe v. Brown,* 203 Va. 508, 125 S.E.2d 159 (1962), the Virginia Court, addressing the question of the effect of failure to give timely notice of a "hit and run" accident upon the maintenance of a "John Doe" suit 8 concluded that:

Code § 38.1–381(d) provides that such notice is required "in order for the insured to recover under the endorsement" in the insurance policy. This is not an action arising *ex contractu* to recover against the insurance company on its endorsement. The insurance company is not a named party defendant and judgment cannot be entered against it in this action. This is an action *ex delicto,* since the cause of action arises out of a tort, and the

only issues presented are the establishment of legal liability on the unknown uninsured motorist, John Doe, and the fixing of damages, if any. This conclusion is strengthened by the language used in § 38.1–381(g), which reads: "* * * nor may anything be required of the insured [plaintiff] except the establishment of legal liability * * *." Notice of the accident to the Division of Motor Vehicles is not required in this action against John Doe.
203 Va. at 515, 125 S.E.2d at 164–65. *See also Truman v. Spivey,* 225 Va. 274, 278–79, 302 S.E.2d 517, 519 (1983); *Rodgers v. Danko,* 204 Va. 140, 142–43, 129 S.E.2d 828, 830 (1963); *Hodgson v. Doe,* 203 Va. 938, 941, 128 S.E.2d 444, 446 (1962).

Additionally, in a certified-question case decided last term, *Davis v. Robertson,* 175 W.Va. 364, 332 S.E.2d 819 (1985), this Court was asked whether the same statutory provisions involved herein permit either a joinder of, or direct action against, the uninsured motorist insurance carrier as a "real party in interest." We recognized in *Davis* that the statutory procedures allowing the insurance company to defend the tort action in the name of the defendant motorist, known or unknown, were intended to continue the long-standing policy of avoiding "the unnecessary mention of insurance coverage at trial because of its possibly prejudicial effect on the jury's verdict." 175 W.Va. 368, 332 S.E.2d at 823. Accordingly, we held in *Davis* that such joinder or direct action was not permissible in a tort action under West Virginia Code § 33-6-31. In the instant case, the insurance company's assertions of contract issues in the name of a "John Doe" defendant transgress the scope of protection against possible prejudice recognized in *Davis.* Rather, an insurer's attempt to bar a tort action against an uninsured motorist by reason of issues pertaining to the contract between the insurer and insured places the case under the "substantial interest" principles recognized in *Anderson v. McDonald,* 170 W.Va. 56, 289 S.E.2d 729 (1982).

torist endorsement or provision ... [w]ithin twenty-four hours after the insured discover, and being physically able to report the occurrence of such accident, the insured, or someone in his behalf, shall report the accident to a police, peace or judicial officer, or to the commissioner of motor vehicles, unless the accident shall already have been investigated by a police officer ...." West Virginia Code § 33–6–31(e)(i) (Supp.1985). The circuit court construed this reference to "the insured" to include all *named* insureds under the particular policy. The *circuit court* then found that Paul Lusk, a named insured, had a duty to make such report and his failure to do so within twenty-four hours immediately after the accident affected the rights of recovery of both plaintiffs.

Subsection (c) of this statute provides, in part, that:

> [T]he term "named insured" shall mean the person named as such in the declarations of the policy or contract and shall also include such person's spouse if a resident of the same household, and the term "insured" shall mean the named insured, and, while resident of the same household, the spouse of any such named insured, and relatives of either, while in a motor vehicle or otherwise, and any person, except a bailee for hire, who uses, with the consent, expressed or implied, of the name insured, the motor vehicle to which the policy applies or the personal representative of any of the above.

It is apparent from a reading of the entire statute that the above terms were defined by the legislature in order to make clear that a certain nonexcludable class of injured persons, particularly family members, must be covered by the uninsured motorist provisions of insurance policies issued in the State. Either by similar legislative definition or by judicial recognition of the public policy embodied in statutorily mandated uninsured motorist coverage other jurisdictions have created a similar class of nonexcludable insureds. *See, e.g.,* Miss. Code Ann. § 83–11–103 (Supp.1985); S.C.Code Ann. § 56–9–810(2) (Law.Co-op. 1977), Va.Code § 38.1–381(c) (Supp.1985); *Alabama Farm Bureau Mut. Cas. Ins.*

*Co., Inc. v. Mitchell,* 373 So.2d 1129 (Ala. Civ.App.1979); *Travelers Ins. Co. v. Spencer,* 397 So.2d 358 (Fla.App.1981); *Squire v. Economy Fire & Cas. Co.,* 13 Ill.Dec. 17, 69 Ill.2d 167, 370 N.E.2d 1044 (1977); *Vernon Fire & Cas. Ins. Co. v. American Underwriters, Inc.,* 171 Ind.App. 309, 356 N.E.2d 693 (1976).

It does not follow, however, that the requirement of notice to authorities by "the insured" contained in subsection (e)(i) should be construed to the effect that the failure of one named insured not directly involved in the accident to timely report such accident prevents recovery under the policy by another insured physically unable to report the accident until sometime after the initial 24-hour period. Although the language of the accident notice provision is somewhat ambiguous, both the broad definition of "insured" under subsection (c) of the statute and the absence of the qualifying adjective "named" in subsection (e)(i) support the construction of the provision which recognizes that the legislature intended that the rights of recovery of each insured, named or otherwise, are not to be prejudiced by the failure of another to give timely notice.

■ We therefore conclude that under West Virginia Code § 33–6–31(e)(i) (Supp. 1985), those injured in person or property are separate "insureds" for the purposes of the notice requirement. By the clear language of this provision, the twenty-four hour notice period is tolled as to insureds "physically unable to report the occurrence of such accident...." Although another person, whether it be another named or additional insured, or a friend, relative or witness to the accident, may report the accident on behalf of a physically injured insured, their failure to do so cannot prejudice those unable to make such report within the initial twenty-four hour period immediately following such accident. *See generally Helvy v. Inland Mutual Insurance Company,* 148 W.Va. 51, 132 S.E.2d 912 (1963) (under policy provisions requiring notice of accident, failure of additional insured to give notice does not relieve insurer

of its liability under the policy where named insured complied with the notice provision). The provision reasonably requires that once a victim of a "hit and run" is physically able to report the accident, that victim has twenty-four hours to make the report unless someone in his or her behalf acts within the same extended time period. Therefore, summary judgment was precluded as to her claims by the disputed issues of material fact pertaining to whether notice was actually sent to DMV, and whether Mrs. Lusk was physically able to give notice earlier.

For the foregoing reasons, the decision of the circuit court is reversed.

Reversed.