350 S.E.2d 711

**Donald Ray PERKINS, et al. Plaintiffs**

v.

**John DOE, Defendant.**

**STATE FARM MUTUAL AUTO INS. CO., Defendant**

v.

**Donald R. PERKINS, et al., Plaintiffs.**

**No. CC959.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 10, 1986.

Decided Nov. 18, 1986.

Dissenting Opinion Jan. 12, 1987.

51-1A-1 to -12 of the West Virginia Code (1981 Replacement Vol.), which authorizes the Court to answer such questions.

The questions arise from an unfortunate automobile accident which took place in Virginia in 1982. Donald R. and Shelia D. Perkins were traveling on State Route 635 when an oncoming unknown motorist crossed over into their lane. Mr. Perkins swerved, avoiding the oncoming car, but striking an embankment. He was seriously injured in the crash and was rendered a quadriplegic.

The Perkins are residents of McDowell County, West Virginia. Their liability insurance policy, issued by State Farm Mutual Automobile Insurance Co., was delivered in West Virginia and included an uninsured motorist endorsement. As provided for in section 33-6-31(e) of the West Virginia Code (Supp.1986), the Perkins brought a "John Doe" suit against the unknown driver in the West Virginia circuit court. State Farm filed pleadings in the case as allowed by statute and then removed it to the federal court. State Farm later brought an action in federal court seeking a declaratory judgment of noncoverage under the policy. Both cases were consolidated and are at the summary judgment stage.

G. David Brumfield, Ballard & Brumfield, Welch, for plaintiffs.

Joseph M. Sanders, Sanders & Watson, Bluefield, for defendants.

**McGRAW, Justice:**

This matter is before this Court because the United States District Court for the Southern District of West Virginia has certified three questions pursuant to sections

We have been asked to decide whether to apply Virginia or West Virginia law to the Perkins' claim and whether any West Virginia public policy or legal doctrine operates to bar their claim on the uninsured motorist endorsement.[1]

■ The "John Doe" suit initiated by the Perkins is an action in tort. *Lusk v. Doe*, 175 W.Va. 775, 338 S.E.2d 375, 379 n. 4 (1985); *see Davis v. Robertson*, 175

---

**1.** The three questions certified were:
1. Under the facts and circumstances outlined in the Statement of Facts attached hereto, must the law of Virginia, which does not require actual physical contact between a hit-and-run vehicle and a claimant's vehicle, *Doe v. Brown*, 203 Va. 508, 125 S.E.2d 159 (1962), or West Virginia, which requires such contact under W.Va.Code § 33-6-31 (1985 Cum. Supp.), be applied to Plaintiffs' claim on their uninsured motorist endorsement?
2. If your response to Question Number One is "Virginia law," does the doctrine that *lex*

*loci* must yield when it conflicts with the public policy of the *lex fori*, *Chase v. Greyhound Lines, Inc.,* [156 W.Va. 444], 195 S.E.2d 810, 813 (1973), *overruled on other grounds, Lee v. Comer,* [159 W.Va. 585], 224 S.E.2d 721 (1976); *Poling v. Poling,* 116 W.Va. 187, 189, 179 S.E. 604 (1935), bar Plaintiffs' claim?
3. If your response to Question Number Two is in the negative, does any other doctrine of West Virginia law operate as a bar to Plaintiffs' claim on the uninsured motorist endorsement?

W.Va. 364, 332 S.E.2d 819 (1985). Under traditional choice of law principles, the West Virginia courts apply the law of the place of wrong in tort cases. *Hopkins v. Grubb*, 160 W.Va. 71, 230 S.E.2d 470 (1977); *Chase v. Greyhound Lines, Inc.*, 156 W.Va. 444, 195 S.E.2d 810 (1973) *overruled on other grounds, Lee v. Comer*, 159 W.Va. 585, 224 S.E.2d 721 (1976); *Lambert v. The Great Atlantic & Pacific Tea Co.*, 155 W.Va. 397, 184 S.E.2d 118 (1971), *Edwards v. Lynch*, 154 W.Va. 388, 175 S.E.2d 632 (1970); *Thornsbury v. Thornsbury*, 147 W.Va. 771, 131 S.E.2d 713 (1963); *Forney v. Morrison*, 144 W.Va. 722, 110 S.E.2d 840 (1959); *Tice v. E.I. duPont de Nemours & Co.*, 144 W.Va. 24, 106 S.E.2d 107 (1958). Therefore, Virginia law applies to the Perkins' claim against "John Doe."

■ The Virginia statute in effect at the time of the accident, which is similar to the West Virginia uninsured motorist statute, allows a "John Doe" action against the unknown defendant and allows the plaintiff's insurance company to take part in the action in the name of "John Doe." Va. Code § 38.1–381 (Cum.Supp.1985). Although the statute is silent on the issue, under Virginia case law, a plaintiff is not required to show that there was physical contact with the "John Doe" automobile. *Doe v. Brown*, 203 Va. 508, 125 S.E.2d 159 (1962). Thus, the Perkins need not allege that there was physical contact between the two vehicles in order to establish legal liability on the part of "John Doe." [2]

■ The argument most favorable to State Farm is that, even if Virginia law applies to the establishment of legal liability on the part of "John Doe," West Virginia law governs the Perkins' claim under the insurance contract. State Farm contends that language in the uninsured motorist endorsement reflecting the West Virginia statute's requirement of physical contact in order to establish legal liability should be applied here to defeat the Per-

kins' claim. State Farm asks us to apply the physical contact requirement of the endorsement, notwithstanding the language of section 33–6–31(g) of the West Virginia Code (Supp.1986) which says, in part, that no endorsement may require anything of the insured "except the establishment of legal liability." A judgment against the uninsured motorist would be sufficient to satisfy this statutory requirement. *Snider v. State Farm Mutual Automobile Insurance Co.*, 360 F.Supp. 929 (S.D.W.Va.1973); *see Hughes v. State Farm Mutual Automobile Insurance Co.*, 604 F.2d 573 (8th Cir.1979) (applying North Dakota law); *Wert v. Burke*, 47 Ill.App.2d 453, 197 N.E.2d 717 (1964); *Haas v. Freeman*, 236 Kan. 677, 693 P.2d 1199 (1985). The notification and filing provisions of section 33–6–31(e) protect the insurance company's due process rights in the determination of legal liability. Any contractual defenses may be asserted in the subsequent action between the insured and his insurance company. *Lawson v. Porter*, 256 S.C. 65, 180 S.E.2d 643 (1971); *Doe v. Brown*, 125 S.E.2d at 165; *Lusk v. Doe*, 175 W.Va. at 779, n. 4 338 S.E.2d at 379–80 n. 4; *see Guthrie v. State Farm Mutual Automobile Insurance Co.*, 279 F.Supp. 837 (D.S.C.1968). Indeed, State Farm has taken full advantage of the self-protective measures available to it by becoming involved in the "John Doe" action, removing it to federal court, filing a declaratory judgment action, and raising its contractual defenses.

Given the facts as alleged, the Perkins may be able to establish legal liability under the relevant Virginia tort law without proving physical contact. In the face of established legal liability under Virginia law, and considering the admonition of section 33–6–31(g) that nothing other than the establishment of legal liability shall be required of the insured, the endorsement relied on by State Farm is of no conse-

---

**2.** The West Virginia statute also provides for the filing of a "John Doe" action, but requires proof that any injuries arose out of physical contact with the vehicle of the unknown motorist. W.Va.Code § 33–6–31(e)(iii) (Supp.1986). As

discussed *infra*, however, this variation in the statutory language of the two states does not reflect such a conflict in public policy as to require that the law of the place of wrong must yield.

quence.[3] A contractual endorsement cannot rise higher than the public policy of West Virginia, explicitly established through statute by the Legislature. *Bell v. State Farm Mutual Automobile Insurance Co.,* 157 W.Va. 623, 207 S.E.2d 147 (1974).

■ It must be remembered that "[t]he primary, if not sole purpose of mandatory uninsured motorist coverage is to protect innocent victims from the hardships caused by negligent, financially irresponsible drivers." *Lusk v. Doe,* 175 W.Va. at 779, 338 S.E.2d at 380. The uninsured motorist statute is remedial in nature and, therefore, must be construed liberally in order to effect its purpose. *State Farm Mutual Automobile Insurance Co. v. Lykouresis,* 72 Cal.App.3d 57, 139 Cal.Rptr. 827 (Cal.Ct. App.1977); *Weathers v. Mission Insurance Co.,* 258 So.2d 277 (Fla.Dist.Ct.App.1972), *overruled on other grounds, Acquesta v. Industrial Fire & Casualty Co.,* 467 So.2d 284 (Fla.1985); *Smith v. Commercial Union Assurance Co.,* 246 Ga. 50, 268 S.E.2d 632 (1980); *Scalf v. Globe American Casualty Co.,* — Ind.App. —, 442 N.E.2d 8 (1982); *Winner v. Ratzlaff,* 211 Kan. 59, 505 P.2d 606 (1973); *Nationwide Mutual Insurance Co. v. Webb,* 291 Md. 721, 436

A.2d 465 (1981); *see Hasson v. City of Chester,* 67 W.Va. 278, 67 S.E. 731 (1910). At a minimum, we think this means that we should read the policy so as to assure the fulfillment of the purchaser's reasonable expectations of coverage. *See* Slawson, *The New Meaning of Contract,* TRIAL, Dec. 1985, at 27.

State Farm's attempt to enforce the physical contact requirement of the endorsement in the face of statutory and case law to the contrary is reminiscent of the erstwhile common law distinction between trespass and trespass on the case. This Court has long since abandoned any such dichotomy and we see no reason to exert ourselves in order to return to that type of legalistic formalism.[4]

In summary, under the specific facts and circumstances of this case, the law of Virginia applies to establish legal liability, and no public policy or legal doctrine operates to bar the Perkins' claim on the uninsured motorist endorsement.[5]

Answered and dismissed.

NEELY and BROTHERTON, JJ., dissent.

BROTHERTON, Justice, dissenting:

**3.** State Farm's reliance on the fact that the endorsement language requiring physical contact was approved by the West Virginia Insurance Commission is misplaced. As noted earlier, the referenced language is simply reflective of the West Virginia statutory requirements for establishing tort liability and was not intended to accommodate the substantive law of any other jurisdiction. The Insurance Commission, of course, does not have the authority to modify the applicable law through its approval of endorsement forms.

**4.** While State Farm does not specify a policy argument for enforcing a physical contact requirement, the most frequently cited such justification is the prevention of fraud or collusion. However, determining if an accident actually occurred as a plaintiff says it did is part of the normal business of our courts. "[O]ur juries and trial courts have constantly performed the function of distinguishing the frivolous from the substantial, the fraudulent from the meritorious." *Lee v. Comer,* 159 W.Va. 585, 593, 224 S.E.2d 721, 725 (1976). It could just as easily be contended that blindly enforcing the physical contact requirement might deter the informed

motorist from taking evasive action in a treacherous driving situation. This certainly would not advance any public policy of the State of West Virginia. Indeed, State Farm's argument may be aimed at avoiding collusion, but the true objective of public policy should be avoiding collision.

**5.** Both parties included in their briefs arguments regarding the maximum amount the Perkins should be able to recover under the endorsement. While we do not have the entire policy before us, we are mindful that any ambiguity in the language of the policy must be resolved in favor of the insured, *Hensley v. Erie Insurance Co.,* 168 W.Va. 172, 283 S.E.2d 227 (1981); Syllabus Point 3, *Polan v. Travelers Insurance Co.,* 156 W.Va. 250, 192 S.E.2d 481 (1972); and are favorably inclined toward the reasoning expressed in recent decisions granting recovery for both family members, *Bilodeau v. Lumbermens Mutual Casualty Co.,* 392 Mass. 537, 467 N.E.2d 137 (1984); *Cano v. Travelers Insurance Co.,* 656 S.W.2d 266 (Mo.1983); *Allstate Insurance Co. v. Handegard,* 70 Or.App. 262, 688 P.2d 1387 (1984) (en banc), *petition for review denied,* 298 Or. 705, 695 P.2d 1371 (1985).

88

You have to dance with the one that brought you.

Uninsured motorist protection is not a common law right of action. It is an action created totally by the West Virginia Legislature and which exists only by statute and in the individual policy. The statute requires every contract of insurance issued in the State of West Virginia to include an uninsured motorist provision, including certain terms and conditions. Therefore, the action is not one based in tort, but one based on statute and contract, West Virginia statute, and contract.

The insured in this case brought an action pursuant to his West Virginia policy and West Virginia statutes. He had to. There was no other possible way to bring the action. There was no common law right of action and the Virginia statute applies only to insurance policies issued in Virginia.[1] The insured did not have a Virginia policy. Nevertheless, the West Virginia policy and statute required that there be a touching before the insured could recover. This put the insured in a pickle. The only way he could get to court was the West Virginia statute, but under that statute the insured would lose once in court because there was no touching at the time of the accident in Virginia. Therefore, the insured used the West Virginia policy in order to get his case into court, and once there switched and used the law which applied to insurance policies issued in Virginia.

The insured used the West Virginia statute to bring him to the ball, but once there, he dropped West Virginia and danced with the Virginia statute. This is bad etiquette and worse law.

I therefore respectfully dissent.

---

1. The case cited by the insured, *Doe v. Brown*, 203 Va. 508, 125 S.E.2d 159 (1962), merely interprets the Virginia statute.