446 S.E.2d 720 (1994)
191 W.Va. 498
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Plaintiff Below, Appellant,
v.
Betty M. NORMAN, administratrix of the Personal Estate of Rhonda Kay Barnett, Defendant Below, Appellee.
No. 21853.
Supreme Court of Appeals of West Virginia.
Submitted January 19, 1994.
Decided July 11, 1994.
*721 Kenneth R. Miller, Tamara J. DeFazio, Furbee, Amos, Webb & Critchfield, Fairmont, for appellant.
Jacques R. Williams, Hamstead, Hamstead & Williams, Morgantown, for appellee.
BROTHERTON, Chief Justice:
This case presents a certified question which evolved from an automobile accident that occurred on Interstate 79 near Morgantown, West Virginia, in the early evening hours of October 17, 1991.
Rhonda Kay Barnett was traveling south on the interstate in a 1991 Volkswagen Jetta. She was driving in the left-hand lane when she passed a tractor-trailer driven by Roy Leon Gaddis, who is believed to be the only witness to this accident. According to Mr. Gaddis, Ms. Barnett struck a large tire which was located on the edge of the left-hand, south-bound lane of the interstate. The tire went up in the air and came to rest in a ditch. Ms. Barnett lost control of her vehicle and ran it into a rock embankment on the right side of the road. She was thrown from her vehicle and landed on the roadway. Mr. Gaddis blocked traffic to prevent Ms. Barnett from being run over, but she died as the result of injuries sustained in the accident.
Mr. Gaddis states that there were no vehicles traveling in front of his truck at the time *722 Ms. Barnett's Jetta came upon the tire. The tire was the size of one normally used on a semi-truck, and it had no rim attached to it. Mr. Gaddis does not know how the tire came to be on the highway.
However, in a separate civil action filed in this matter by Betty K. Norman, Administratrix of the Personal Estate of Rhonda Kay Barnett, against John Doe and the West Virginia Department of Highways (DOH), Mrs. Norman alleges that the truck tire had been on the highway for approximately eight hours prior to the fatal accident. In her complaint, Mrs. Norman indicates that several hours before the accident, a radio dispatcher from the West Virginia Department of Public Safety barracks in Morgantown had telephoned the DOH to inform them that a motorist had seen a truck tire in the passing lane of Interstate 79 near the 141 mile marker. The DOH employee stated, "O.K., we'll take care of it." The accident occurred nearly two hours later.
The 1991 Volkswagen Jetta Ms. Barnett was driving was insured by a policy issued by State Farm Mutual Automobile Insurance Company (State Farm) to Mrs. Norman, who was Ms. Barnett's grandmother, with whom she resided at the time of the accident. Mrs. Norman represents that she purchased the insurance coverage on September 5, 1991, at which time she exercised her option to buy additional uninsured motorist protection beyond the statutory minimum requirements. According to Mrs. Norman, the State Farm forms which she signed informed her that the additional coverage she was purchasing would protect her "[w]hen an accident is caused by an at-fault unidentified or at-fault uninsured driver." The policy contained uninsured motorist coverage with limits of $100,000.00 per person, $300,000.00 per accident, and $10,000.00 in property damage. A second policy issued to Mrs. Norman on a 1990 Chevrolet Cavalier had the same uninsured coverage limits.
After the accident, State Farm paid under the policy's collision coverage for damages to the car and under its medical-pay provisions for medical bills and funeral expenses. Mrs. Norman subsequently asserted a claim for the policy limits under the uninsured motorist coverage of both policies. State Farm denied this claim and filed a complaint for declaratory judgment, seeking a determination of its rights, duties, obligations, and liabilities under the policies issued to Mrs. Norman. Mrs. Norman filed an answer and a motion to dismiss, and discovery was undertaken, during which State Farm representative James Alonzo Smith and Mrs. Norman were deposed.
On March 7, 1993, State Farm filed a motion for summary judgment and a supporting memorandum addressing the issue of whether a tire of unknown origin lying on a highway is an uninsured motor vehicle as required for uninsured motorist coverage under the West Virginia Code and State Farm insurance policies.
Mrs. Norman subsequently moved for certification of the question to this Court. The United States District Court for the Northern District of West Virginia found that the issues presented "a difficult question of state law and policy on insurance" and, in an amended order dated August 19, 1993, the following question was certified to this Court for review and decision:
Whether uninsured motorist coverage is available pursuant to W.Va.Code § 33-6-31 (1988) and State Farm policies of insurance for the death of an insured driver whose vehicle struck a tire of unknown origin lying on a public highway?
"Uninsured motorist insurance is a fault-based coverage which obligates insurers to provide indemnification for injuries caused by uninsured or unidentified motorists...." 1 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance, § 9.2 at 443 (2d ed. 1992). Motorists in West Virginia are required by law to carry uninsured motorist protection. West Virginia Code § 33-6-31(b) (1992) requires that every motor vehicle liability insurance policy issued in the State "contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an *723 uninsured motor vehicle,"[1] within certain specified limits.
"When the cause of action is against an unknown (`hit and run') motorist, the proper procedure ... is to institute a `John Doe' action pursuant to subsection (e)(iii) of West Virginia Code § 33-6-31." Lusk v. Doe, 175 W.Va. 775, 338 S.E.2d 375 (1985). The State Farm insurance policy includes the following within its definition of an "uninsured motor vehicle:"
2. a "hit-and-run" motor vehicle whose owner or driver remains unknown and which strikes:
a. the insured,
b. the vehicle the insured is occupying, or
c. other property of the insured
and causes bodily injury to the insured or property damage.
In his treatise on uninsured and underinsured coverage, Alan I. Widiss explains that "[t]he coverage terms that define a `hit-and-run' vehicle in terms of `physical contact' that is, `contact' with either an insured or a vehicle in which an insured is an occupant were designed to prevent fraudulent claims." Widiss, supra, § 9.2 at 443. Widiss states that "[b]y requiring that there be a `physical contact' when the identity of an offending motorist was unknown, the drafters sought to foreclose claims arising from accidents that were allegedlybut not actuallycaused by the operation of an unidentified vehicle." Id. West Virginia Code § 33-6-31(e)(iii) (1992) states that:
(e) If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured be unknown, the insured, or someone in his behalf, in order for the insured to recover under the uninsured motorist endorsement or provision, shall:
* * *
(iii) Upon trial establish that the motor vehicle, which caused the bodily injury or property damage, whose operator is unknown, was a "hit and run" motor vehicle, meaning a motor vehicle which causes damage to the property of the insured arising out of physical contact with such motor vehicle therewith, or which causes bodily injury to the insured arising out of physical contact of such motor vehicle with the insured or with a motor vehicle which the insured was occupying at the time of the accident.... (Emphasis added.)
"The purpose of the `John Doe' action, insofar as the uninsured motorist statute is concerned, is to establish liability of the unknown owner or operator and the amount of damages recoverable against the insured party's insurance carrier." Lusk, 338 S.E.2d at 378. However, "[i]n order for the insured to recover from the insurer, upon trial it must also be shown that the injuries were incurred after physical contact with the hit and run vehicle." Id.
In the State Farm policy at issue in this case, the uninsured motorist coverage endorsement provides that State Farm "will pay damages for bodily injury and property damage an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury or property damage must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle." State Farm representative James Alonzo Smith cited State Farm's opinion "that this tire or object in the highway would not be considered a motor vehicle" as the basis for State Farm's decision to deny Mrs. Norman's claim for uninsured motorist coverage.
State Farm now argues that it is clear from the statutory language in W.Va.Code § 33-6-31(e)(iii) that physical contact with a motor vehicle whose owner or operator is unknown is a necessary prerequisite to recovery of uninsured motorist benefits. State *724 Farm concedes that there was physical contact between the Barnett vehicle and a tire of unknown origin which was lying on a public highway, but contends that a tire of unknown origin lying on a highway is not a motor vehicle and, therefore, the uninsured motorist coverage is not available.
The situation in which an insured attempts to recover uninsured motorist benefits for damages caused by an object lying on a roadway presents an issue of first impression for this Court. However, we note than when coverage disputes involve this type of issue, courts have usually affirmed the insurer's rejection of the claim for uninsured benefits. 1 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance, § 9.6 at 467 (2d ed. 1992).
State Farm relies primarily on three cases from other jurisdictions to support its argument that the insured must have physical contact with the hit-and-run vehicle in order to recover under the uninsured motorist policy.
First, in Blankenbaker v. Great Central Insurance Company, 151 Ind.App. 693, 281 N.E.2d 496 (1972), a camper-bus driven by the insured struck a large, immobile truck tire and rim with attached angle iron which was directly in its path on a single-lane highway. The driver lost control, and the camper-bus overturned. No other vehicle was involved in the accident, and there were none in the vicinity of the accident. The driver was the only person who saw the tire and rim, and it was not found after the accident. The driver said he assumed it was dropped by a large vehicle.
The uninsured motorist provision in the policy in Blankenbaker defined a hit-and-run automobile as "an automobile which causes bodily injury to an insured arising out of physical contact of such automobile...." Id. 281 N.E.2d at 500. The court stated that "as a matter of law the tire and rim assembly which Blankenbaker struck is not a hit-run automobile within the terms of the policy. There was no direct physical contact by the camper-bus with an `automobile.' To reach any other conclusion would be a significant retreat from reality." Id. at 501.
The Blankenbaker court next considered the indirect physical contact doctrine, referring to several New York cases in which "objects protruding from passing vehicles, or objects thrown from passing vehicles, or parts falling off of passing vehicles and striking the insured's automobile, were determined to be indirect physical contact with a hit-and-run vehicle, thereby allowing recovery under an uninsured motorist provision." Id. The court distinguished these cases by explaining that "[t]hey involve questions of whether contact must be direct or indirect. In each of them, an automobile or vehicle was present at the scene of the accident and, in fact, was a direct cause of the contact with the insured's vehicle." Id.
The court noted that no other vehicle was shown to be within the vicinity of Blankenbaker's accident, and "[t]here was a total lack of evidence tending to establish a causal connection between some vehicle and this tire and rim assembly. The assembly was not shown to be a part of a hit-and-run automobile, which is essential to invoking the indirect physical contact doctrine." Id. at 501-02. Finally, the court concluded that, even assuming that the tire and rim assembly had fallen off another vehicle and come to rest on the highway, "contact by the camper-bus with it is too remote and disconnected to constitute contact with an `automobile.' We reject the indirect physical contact doctrine. To accept it is to rewrite the contract between the parties." Id.
A second case cited by State Farm is Yutkin v. United States Fidelity & Guaranty Company, 146 Ill.App.3d 953, 100 Ill.Dec. 493, 497 N.E.2d 471 (1 Dist.1986), in which the insured struck a tire fragment in the center lane of a highway. A witness driving behind the insured stated that he did know how the tire fragment came to be on the roadway, did not see it come off any other vehicle, and saw no vehicles ahead of the insured's car prior to the accident. The uninsured motorist provision in the policy at issue defined a hit-and-run vehicle as "a highway vehicle which causes bodily injury to an insured arising out of physical contact of such vehicle with the insured or with a vehicle the insured is occupying at the time of *725 the accident...." Id. 100 Ill.Dec. at 494, 497 N.E.2d at 472.
The Illinois court stated that "[t]he purpose underlying the physical contact requirement is to prevent fraudulent claims. The uninsured motorist statute is meant to compensate persons damaged through the wrongful conduct of uninsured motorists but the relevant policy language which functions to prevent fraud does not dilute this statutorily required coverage." Id. Recognizing that "[w]here no physical contact occurs, a denial of coverage has been upheld," the court then reviewed the law involving indirect physical contact:
Hit-and-run cases involving indirect physical contact and finding coverage exists have included facts involving an unidentified vehicle hitting an intervening vehicle which in turn hits the insured's car (see, e.g., State Farm Mutual Automobile Ins. Co. v. Carlson (1973), 130 Ga.App. 27, 202 S.E.2d 213); the insured's vehicle being struck by an object flying off a passing unidentified vehicle (see, e.g., Illinois National Ins. Co. v. Palmer (1983), 116 Ill. App.3d 1067, 72 Ill.Dec. 454, 452 N.E.2d 707); and the insured's vehicle striking an integral part of a vehicle which is lying on the road (see, e.g., Adams v. Mr. Zajac (1981), 110 Mich.App. 522, 313 N.W.2d 347).
Id. 100 Ill.Dec. at 495, 497 N.E.2d at 473. The Yutkin court then distinguished its holding in Illinois National Ins. Co. v. Palmer, 116 Ill.App.3d 1067, 72 Ill.Dec. 454, 452 N.E.2d 707 (1983), in which it found coverage when the insured's car crashed after it was struck by a lug nut flying off an unidentified passing vehicle:
The Palmer court reasoned that uninsured motorist coverage existed because there was a direct causal connection between the hit-and-run vehicle and the insured's vehicle, which connection carried over to the insured's vehicle by means of a continuous and contemporaneously transmitted force. The present case differs considerably from Palmer. Here, there is no direct causal connection between any vehicle and plaintiffs' vehicle. It is unknown whether another vehicle even existed or, for example, whether the object lying in the road had fallen from a garbage truck weeks earlier. There is simply no evidence of when or how the piece of debris came to rest in the road. (Compare Adams v. Mr. Zajac (two witnesses observe truck pulling away from side of highway at the same time the insured struck a tire and rim assembly lying in the middle of the road).) Here no evidence shows that the object was thrown directly from a passing vehicle as in Palmer.

Id. The Yutkin court concluded that "any connection between the object plaintiff struck and another vehicle is far too attenuated to permit this court to declare that plaintiffs are entitled to benefits under the hit-and-run clause of the uninsured motorists policy." Id. 100 Ill.Dec. at 497, 497 N.E.2d at 474. The court then added that the law of Illinois gives "no indication that the courts or legislature are willing to extend the physical contact requirement to permit an insured, whose vehicle hits debris strewn in the roadway with no evidence of the source of the debris, to successfully claim they were damaged by the negligence of a hit-and-run driver." Id.
State Farm also relies on a more recent decision by the Court of Appeals of Georgia in State Farm Fire & Casualty Company v. Guest, 203 Ga.App. 711, 417 S.E.2d 419 (1992). The insured lost control of her car when she struck a tire assembly that was lying in the center lane of a highway. She filed a "John Doe" action alleging that the tire assembly detached from an unidentified truck whose driver negligently left the tire assembly in the middle of the highway.
The insurance company moved for summary judgment, arguing that the insured was not entitled to uninsured motorist benefits because there was no actual physical contact with the unknown vehicle, as required by Georgia statute. OCGA § 33-7-11(b)(2) states that "... actual physical contact must have occurred between the motor vehicle owned or operated by the unknown person and the person or property of the insured." Id. 417 S.E.2d at 420. However, a corroboration exception in the statute then provides that "[s]uch physical contact shall not be required if the description by the claimant of *726 how the occurrence occurred is corroborated by an eyewitness to the occurrence other than the claimant." Id. at 420-21.
Particularly relevant to our inquiry, however, is the fact that the Georgia court rejected the insured's contention that, under a liberal reading of the statute, physical contact between an insured vehicle and a part of a motor vehicle constitutes actual physical contact with a motor vehicle. Id. at 421. The court explained:
We are aware of no Georgia cases which have considered the issue of whether a tire assembly constitutes a motor vehicle, and in the absence of binding authority, we must read OCGA § 33-7-11(b)(2) "according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending [its] operation. [Cit.]" Integon Indem. Corp. v. Canal Ins. Co., 256 Ga. 692, 693, 353 S.E.2d 186 (1987). The tire assembly was neither a self-propelled vehicle nor a vehicle having more than three wheels, and even applying a liberal construction, we cannot conclude that the tire assembly was a motor vehicle within the meaning of the uninsured motorist statute.
Id.
The Court of Appeals discussed the indirect physical contact doctrine and then proceeded to affirm the lower court's denial of the insurer's summary judgment motion. "[A] reasonable inference to be drawn from appellee's collision with a tire assemblyan integral part of a motor vehicleis that the tire assembly was negligently attached to an unknown vehicle from which it fell and left in the roadway by the driver of that unknown vehicle. See J.C. Penney Cas. Ins. Co. v. Woodard, 190 Ga.App. 727(4), 380 S.E.2d 282 (1989)." Id. at 422. The court reasoned that "[t]hat inference, as well as any other inference, is circumstantial evidence which the jury must consider along with all the other evidence to be weighed in its determination of where the preponderance of the evidence lies on the issue of whether an unknown motor vehicle caused the accident. Macon Coca-Cola Bottling Co. v. Chancey, 216 Ga. 61(3), 114 S.E.2d 517 (1960)." Id.
In the case now before us, State Farm points out that in Guest, the Court of Appeals affirmed the denial of the insurer's motion for summary judgment only because an inference could have been drawn that the tire and rim assembly may have been attached to a motor vehicle. State Farm argues that this type of inference is not reasonable in this case because the tire struck by the Barnett vehicle had no rim assembly attached to it, and thus, it cannot reasonably be inferred that the tire was attached to an unknown vehicle. Therefore, State Farm maintains that uninsured motorist coverage should not be available and that our response to the certified question should be no.
For her part, the appellee, Betty M. Norman, does not ask that we abandon the requirement that there must be "some form of physical contact." However, the appellee does urge this Court to apply the physical contact requirement "in a reasonable fashion in keeping with the purpose" of West Virginia's uninsured motorist statute. The appellee suggests that "Mississippi's approach to this problem appears sound" because "[t]he victim is protected by receiving the coverage for which he bargained, while the insurer is protected from fraudulent claims involving `phantom vehicles'." However, the reasoning in the two cases cited by the appellee seems closer to the position advanced by the appellant, State Farm, and particularly to the discussion in Yutkin, supra.
First, in Southern Farm Bureau Casualty Insurance Company v. Brewer, 507 So.2d 369 (Miss.1987), the insured was a passenger in an automobile. An unidentified driver in a pickup truck suddenly swerved in front of the insured auto and struck a brake drum that was lying in the lane of traffic. The brake drum was propelled into the windshield of the insured car, and it struck the passenger Brewer in the face.
The insurance policy contained exactly the same definition of "uninsured motor vehicle" that is found in the policy in the case now before us, requiring physical contact "of" the hit-and-run vehicle "with the insured or with an automobile which the insured is occupying at the time of the accident...." Unlike our *727 statute, Mississippi's uninsured motorist statute states that "physical contact must have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured." Id. at 370 (emphasis added).
The Mississippi court proceeded to adopt the indirect physical contact doctrine, deciding that "[a]n object propelled by one vehicle into another is sufficient to satisfy the physical contact requirement for recovery under the uninsured motorist provision for a hit-and-run driver." Id. at 371. The court held:
[T]hat the "physical contact of such vehicle" includes the physical contact of that vehicle with an intermediate vehicle or other object which, in the same mechanism of the accident, strikes the insured's vehicle.... Specifically, the injury causing impact must have a complete, proximate, direct and timely relationship with the first impact between the hit-and-run vehicle and the intermediate vehicle. In effect, the impact must be the result of an unbroken chain of events with a clearly definable beginning and ending, occurring in a continuous sequence.
Id. at 372, citing Springer v. GEICO, 311 So.2d 36, 39-40 (La.App.1975). The court reasoned that if the insurance company had meant for the physical contact requirement to apply only when there was direct, as opposed to indirect, physical contact between the hit-and-run vehicle and the insured vehicle, "it should have so provided in unmistakably clear language.... Such reasoning is consistent with the express purposes of the Mississippi Uninsured Motorist Coverage Act to be remedial in nature and liberally construed to accomplish its purpose." Id. at 372, citing Stringer v. Bufkin, 465 So.2d 331 (Miss.1985).
Next, the appellee cites Anderson v. State Farm Mutual Automobile Insurance Company, 555 So.2d 733 (Miss.1990), as evidence that, in spite of the holding in Southern Farm, Mississippi has remained conservative in this area of the law. The appellee states that in Anderson, "uninsured motorist coverage was denied because there was no physical contact whatsoever either between vehicles or with an object."
Both parties in Anderson stipulated that there was no actual physical contact between the insured's vehicle and the unknown vehicle. The insured was attempting to pass the unknown vehicle when, "under circumstances not completely clear, he lost control of his vehicle...." Id. at 733. The insured's vehicle left the road and rolled over, and the insured was killed.
The Supreme Court of Mississippi stated that "[w]e are faced with language requiring actual physical contact and a factual scenario where all agree there was none." Id. at 734. The court's discussion is enlightening:
Plaintiffs seek more modest comfort in our Southern Farm decision. In that case an unidentified vehicle cut in front of the plaintiff's vehicle, and in doing so struck a brake drum lying in the road. The impact propelled the brake drum through the windshield of the Brewer vehicle and struck Brewer in the face. The interpretive issue before the Court lay within the penumbra of doubt regarding "actual physical contact," both the statute and contract being without explicit directive regarding physical contact between the uninsured motorist's vehicle and another object which in turn struck the plaintiff. Reflection makes clear that an exclusion of cases where the uninsured motorist strikes an object which strikes the plaintiff could produce absurd results. Consider, for example, the case where the uninsured motorist rearends one vehicle which in turn strikes the plaintiff's vehicle in the rear. Since a brake drum lying in the road may not consistent with its properties and the laws of gravity self-propel itself through the windshield of an oncoming vehicle, the Court in Southern Farm found the evidentiary qualities implicit in the "actual physical contact" requirement and recognized coverage. More important, Southern Farm found an interpretation recognizing the intermediary role of the brake drum, one which both fit and proceeded from a policy view that best justified the "actual physical contact" mandate of the legal language. This is a far cry from today's case where the only contact experience *728 by Pierce's vehicle was his fatal contact with mother earth.
Id. at 734-35 (emphasis added).
Both of these Mississippi cases recognize the need for some kind of actual physical contact. There was absolutely none in Anderson, while in Southern Farm the court found indirect contact with the hit-and-run vehicle where it struck an intermediary object and propelled the object through the windshield of the insured's vehicle.
As our discussion thus far illustrates, there are an infinite variety of convoluted scenarios which can give rise to claims for uninsured motorist benefits. In Lusk v. Doe, supra, we recognized that "[t]he primary, if not sole purpose of mandatory uninsured motorist coverage is to protect innocent victims from the hardships caused by negligent, financially irresponsible drivers." Lusk, 338 S.E.2d at 380. "The uninsured motorist statute, West Virginia Code § 33-6-31 (Supp. 1986), is remedial in nature and, therefore, must be construed liberally in order to effect its purpose." Syl. pt. 7, Perkins v. Doe, 177 W.Va. 84, 350 S.E.2d 711, 714 (1986).
The problem which now confronts us was considered by the Court of Appeals of New York in Smith v. Great American Insurance Company, 29 N.Y.2d 116, 324 N.Y.S.2d 15, 272 N.E.2d 528 (1971):
The issue involved here has troubled other courts and as may be expected there have been divergent conclusions. It is not an issue easy to resolve or a test easy to apply. Nor may one be confident that any verbal formulation, however precise one might wish to make it, could or would embrace every conceivable combination of events which may arise. The goal is to accord every liberal extension to the remedial statute but not to the point of judicially removing the meaning and frustrating the purpose of limiting language deliberately inserted into the statute.
Id. 324 N.Y.S.2d at 19, 272 N.E.2d at 531 (citations omitted).
Commentator Alan I. Widiss notes that most courts decide these types of coverage disputes on a case-by-case basis. Widiss observes that "[h]ow far other courts will go in interpreting the physical contact requirement to facilitate recoveries by claimants is unclear." Widiss, supra, § 9.6 at 469.
We agree that resolution of the issue will often depend upon how far a court is willing to go in interpreting the physical contact requirement in order to permit a recovery by the insured. Once again, the discussion in Smith is particularly instructive:
Finally, the impulse to read the statute liberally and to effect its purpose must be limited by the language used. In statutory construction, purpose may permit a broad and even an unusually broad rendering of the statutory language. But purpose cannot be a warrant to go beyond the language used. The language is a limitation on construction even as the purpose may be a liberalizing factor ... The two factors must be accommodated. The [Motor Vehicle Acc. Indemnification Corp. v.] Eisenberg [18 N.Y.2d 1, 271 N.Y.S.2d 641, 218 N.E.2d 524 (1966) ] case by its rule permitting physical contact with the offending vehicle to include indirect contact was a liberating influence. But the indirect contact, a broad construction in itself, cannot be then used again as a starting point to cover any indirect causation however convoluted, reducing the "contact" part of the statutory term to a nullity. Obviously most accidents have some physical beginning and the harm is almost always a physical consequence. The point is that between the two there must be a closer and more substantial physical nexus either in a single collision or in connected collisions.
Smith, 324 N.Y.S.2d at 18-19, 272 N.E.2d at 530-31 (citations omitted).
The physical contact requirement is unquestionably an explicit part of West Virginia's uninsured motorist statute. However, there is no close and substantial physical nexus between the alleged hit-and-run vehicle and the insured vehicle in the case now before us. For that reason, we cannot extend the concept of "physical contact" as far as it would be necessary to extend it in order to find that the physical contact requirement had been satisfied here. To suggest even the most attenuated kind of indirect physical *729 contact between an unidentified hit-and-run vehicle and the insured vehicle is a questionable proposition in this instance.
This Court must remain cognizant of the fact that the insertion of a physical contact requirement in the uninsured motorist statute was a matter of legislative choice. Should the legislature now feel that the remedial purposes of the uninsured motorist statute are frustrated by our determination that the physical contact requirement requires there to be actual physical contact either direct or indirectin circumstances like those now before us, it is certainly within the legislature's power to remedy the situation.
To summarize, we conclude that absent specific coverage provisions to the contrary, uninsured motorist coverage is not available where an insured vehicle strikes a tire or other type of immobile object or debris which may be lying on a highway. In order to satisfy the "physical contact" requirement set forth in W.Va.Code § 33-6-31(e)(iii), it is necessary to establish a close and substantial physical nexus between an unidentified hit-and-run vehicle and the insured vehicle. The "physical contact" requirement is not satisfied simply by asking a court to assume that, but for the negligence of an unknown and unseen driver, the tire or other object would never have been deposited on the highway.
For the foregoing reasons, our answer to the certified question is that uninsured motorist coverage is not available pursuant to W.Va.Code § 33-6-31 (1988) and State Farm policies of insurance for the death of an insured driver whose vehicle struck a tire of unknown origin lying on a public highway.
Certified Question Answered.
NOTES
[1] In W.Va.Code § 33-6-31(c), an "uninsured motor vehicle" is defined as follows:

[A] motor vehicle as to which there is no (i) bodily injury liability insurance and property damage liability insurance both in the amounts specified by section two, article four, chapter seventeen-d, as amended from time to time, or (ii) there is such insurance, but the insurance company writing the same denies coverage thereunder, or (iii) there is no certificate of self-insurance issued in accordance with the provision of section two [§ 17D-6-2], article six, chapter seventeen-d of the code of West Virginia.