A92A1872. LANGFORD v. ROYAL INDEMNITY COMPANY.
(430 SE2d 98)

BIRDSONG, Presiding Judge.

Appellant Shirley Langford appeals the trial court's order granting summary judgment to her uninsured motorist carrier.

An NGR truck slid or swerved into appellant's driving lane causing her to take evasive action; she avoided colliding with the truck but ran into the road curbing and sustained personal injury. Appellant brought suit for damages against NGR which asserts, inter alia, a third-party negligence defense. NGR claims that a Buick, whose driver and owner are unknown, stopped in front of its truck causing NGR's driver to come to an immediate stop, that its truck bumped the Buick and, that in the process of stopping, the truck trailer slid into appellant's lane. Although appellant did not personally see the Buick, after being served with NGR's answer, appellant added a "John Doe" defendant and served her uninsured motorist carrier, Royal Indemnity Company (Royal). Royal filed an answer denying liability and a motion for summary judgment; the trial court granted the motion. *Held:*

1. In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370

SE2d 843).

2. Royal asserts it is entitled to summary judgment because it is not a party to this action, and that it merely filed pleadings as the uninsured motorist carrier. Appellee's brief filed with this court is captioned "Brief of Appellee 'John Doe' by Royal Indemnity Company as the Uninsured Motorist Carrier." However, the record reveals that Royal filed an answer captioned in its own name, to-wit: Answer of Royal Insurance Company of America. While in this pleading Royal identifies itself as "the purported uninsured motorist carrier of plaintiff," it filed its answer as Royal Insurance Company of America, and in its own name "pray[ed] that . . . the claim as to Royal Insurance Company of America be dismissed."

OCGA § 33-7-11 (d) provides "the insurance company shall have the right to file pleadings and take other action allowable by law in the name of 'John Doe' *or itself*." (Emphasis supplied.) Although appellee Royal attempts to mend the style of its pleading on appeal so as to file in the name of "John Doe," its status is determined by the nature of its filing election before the trial court. By electing to participate *directly* in this suit by filing an answer in its own name, rather than in the name of John Doe (or, where appropriate, in the name of the uninsured motorist), Royal, the uninsured motorist carrier, assumed the status of a named party as a matter of law. *Moss v. Cincinnati Ins. Co.*, 154 Ga. App. 165, 169 (268 SE2d 676), citing *Home Indem. Co. v. Thomas*, 122 Ga. App. 641 (178 SE2d 297).

Royal also filed an amended answer in its own name without any reference to its status as uninsured motorist carrier. Compare *Moss*, supra. Royal also filed in its own name, without qualification as to status, a request for the filing of original discovery, and subsequently filed in its own name, after reciting that it had been served as a purported uninsured motorist carrier, a motion for summary judgment. Appellee, by virtue of this conduct, would be deemed a party to the action even had it elected to answer solely in behalf of "John Doe." *Garrett v. Standard &c. Ins. Co.*, 201 Ga. App. 251 (410 SE2d 806).

Additionally, Royal elected to litigate the question of coverage under the policy. Royal could not litigate the question of coverage in this suit unless it had in fact become a party defendant. See *Maxwell v. State Farm Ins. Co.*, 196 Ga. App. 545 (1) (396 SE2d 291); but see *Hoffman v. Doe*, 191 Ga. App. 319 (381 SE2d 546).

Appellee's contention as to its status in this suit is frivolous.

3. Appellant contends that OCGA § 33-7-11 (b) (2) notwithstanding, she was vested with greater rights under the terms of her insurance contract with Royal, and that therefore genuine issues of material fact exist as to its uninsured motorist claim.

(a) A contract that is in compliance with the requirements of governing statutes may include provisions different from and more lib-

eral than those prescribed by such law (*Maxwell*, supra at 546); conversely, a contract provision is unenforceable if it fails to comply with existing, governing statutory requirements by attempting to provide fewer rights than legally mandated by such statute, as "one cannot do indirectly that which the law does not allow to be done directly" (*Richmond County v. McElmurray*, 223 Ga. 440, 443 (1) (156 SE2d 53)). A contract provision normally should not be enforced where it conflicts with the general policy and spirit of the statute which governs it, although there may be no literal conflict; that is, it makes no difference whether the statutory prohibition or command is expressed or implied. 17A AmJur2d, Contracts, § 252.

(b) In construction of the insurance provision, certain principles of contract construction apply: provisions of an insurance policy are to be construed strictly against the insurer who drafted them (*Southern Guaranty Ins. Co. v. Goddard*, 259 Ga. 257, 259 (379 SE2d 778)); contracts wherever possible should be given a construction that renders them in compliance with governing statutes rather than in contravention thereof (*Grantham Transfer Co. v. Hawes*, 225 Ga. 436, 443 (169 SE2d 290)); and if an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured (*Claussen v. Aetna Cas. &c. Co.*, 259 Ga. 333 (1) (380 SE2d 686)).

(c) The insurance policy defines an uninsured motor vehicle as including a land motor vehicle which is a hit and run vehicle whose operator or owner cannot be identified and which hits *or* which causes an accident resulting in bodily injury or property damage without hitting "your covered auto." The policy also contains the following *limiting provision* regarding an uninsured motor vehicle: "If there is no physical contact with the hit and run vehicle the facts of the accident must be corroborated by an eyewitness to the accident other than the 'insured' making the claim." In this case, there was no physical contact, direct or indirect, between the phantom vehicle and the claimant's vehicle; at most, there was physical contact between the truck and the phantom vehicle — the chain of physical contact thereafter being broken when appellant successfully avoided any touching of the truck's trailer with her vehicle. Accordingly, we need not re-visit the issue of "indirect physical contact." *State Farm Fire &c. Co. v. Guest*, 203 Ga. App. 711, 713 (417 SE2d 419).

The limiting provision in the insurance contract at issue is substantially the same as that interpreted by this court in *Maxwell*, supra. Appellant asserts that *Maxwell* is controlling. Royal, however, asserts that *Maxwell* is distinguishable, and that this court must interpret the term "corroborated" as used in the contract provision. Royal argues that it is not sufficient that a sole eyewitness testify to facts which would support a plaintiff's averments in the complaint

when the averments are not supported by any *evidence* other than what the eyewitness has said. In other words, Royal contends that claims averments must be based on some evidence independent of the testimony of the eyewitness. In so claiming, Royal argues that this result is obtained because the term "corroborated," as used in both the statute and contract, means "to add weight or credibility to a thing by additional and confirming facts or evidence, and 'corroborating evidence' means evidence supplementary to that already given . . . additional evidence of a different character to the same point." (Emphasis omitted.)

In *Atlanta Cas. Ins. Co. v. Crews*, 197 Ga. App. 48 (397 SE2d 466), we construed the provisions of OCGA § 33-7-11 (b) in a situation where the claimant did not see the phantom vehicle and there was an eyewitness who was not involved in the incident. We found that "the intent of the legislature [was] to create a reasonable rule which would reduce the possibility of fraudulent claims where the phantom vehicle did not cause actual physical contact, while still allowing an innocent automobile victim 'coverage for accidents caused by unknown motorists where the unknown motorist vehicle does not physically contact the insured's vehicle,' but where the claimant's assertions of a phantom vehicle could be corroborated by an eyewitness." Id. at 50. Consistent with this intent, it was concluded that "we do not believe that the legislature intended to create a rule which would arbitrarily preclude coverage . . . of a victim injured so rapidly or so severely she could not testify as to how the occurrence happened, regardless of the number of competent witnesses available to testify as to the actual involvement of a . . . phantom vehicle." Id. We further found that the claimant did not have to be able to tender her own eyewitness account in order to establish the requisite causal connection between the John Doe driver and the accident. Id. Thus, it is apparent that the claimant need not *in each and every case* personally witness the phantom driver's conduct or even be aware of the vehicle's presence to maintain her uninsured motorist claim under the statute; neither does the statute require that there be two eyewitnesses, such as, the claimant and a third party or two third parties, or even that the eyewitness be a disinterested third-party witness. Id. What is required by statute is that the claimant's "description" be corroborated by an eyewitness to the occurrence other than the *claimant*. The statutory term "description" is merely a statement, account, or picture in words that describes; descriptive representation; the act or method of describing. Id. Consistent with our prior definition of the term "description," we conclude that the intended, and usual and common signification, of the term "corroborate" (OCGA § 13-2-2 (2)), as that term is employed in OCGA § 33-7-11 (b) (2), is simply "to make more certain" (Webster's Encyclopedic Unabridged

Dictionary of the English Language, 1989 ed.) or to strengthen (Black's Law Dictionary, 5th ed.). Thus, what is provided under OCGA § 33-7-11 (b) (2) is that physical contact is not required to be established when the description, that is, the descriptive representation or statement, contained in claimant's pleadings of how the incident occurred is corroborated, that is, made more certain or strengthened, by an eyewitness to the occurrence other than the claimant. The claimant does not in each and every case have to have personal knowledge of the phantom vehicle; and, the extent and form of corroboration necessary will vary according to the circumstances of each case — seeking always to comply in a just manner with the intent of the legislature as expressed in *Crews*, supra.

Although the term "corroborate" can be given a more liberal meaning than that attributed to the word in the statute, it cannot be given a more restrictive meaning in the contract so as to vest appellant with fewer rights or privileges than mandated by the governing statute. Compare *Richmond County*, supra; *Maxwell*, supra. Even though the limiting provision of the contract purports to require the corroboration of "facts," it cannot be interpreted in such a manner as to require more than the corroboration of a description, within the meaning of OCGA § 33-7-11 (b) (2). Notwithstanding the employment of the term "corroboration" in the contract provision in this case (a term likewise employed in the insurance provision construed in *Maxwell*, supra), *Maxwell* concluded that the contract provision pertaining to " 'the facts of the accident' are not necessarily dependent upon the personal observations of the claimant." Id. at 547. Accordingly, in this case, as in *Maxwell* and unlike the circumstances in *Curtis v. Allstate Ins. Co.*, 203 Ga. App. 25 (416 SE2d 359) and *Hoffman v. Doe*, 191 Ga. App. 319 (381 SE2d 546), "appellant would not be required to provide a corroborated *firsthand* account of the insured event to state a claim for coverage. Appellant can state a claim for coverage under the terms of her policy by merely asserting the existence of facts which are not necessarily within her personal knowledge and she would be entitled to benefits *if* those asserted facts can be corroborated by someone who was an eyewitness to their occurrence," even if such eyewitness also was involved in the collision and was not a disinterested witness. (Emphasis supplied.) *Maxwell*, supra at 547. Assuming without deciding that *Hoffman*, supra, and *Curtis*, supra, correctly hold that OCGA § 33-7-11 (b) (2) authorizes a limitation of coverage to those instances wherein the claimant is himself a corroborated eyewitness to the asserted fact of John Doe's involvement (but compare *Crews*, supra), the policy that was issued in this case to appellant by Royal extends coverage to those instances wherein an eyewitness can corroborate John Doe's involvement as actually asserted by claimant in its *description of facts* in its amended

complaint (utilizing, of course, no definition of "description" or of "corroborate" more restrictive than as those terms are employed in the governing statute). "Because the policy that was issued by appellee *does* extend broader coverage [in the case at bar] than would be required under OCGA § 33-7-11 (b) (2) *as construed in Hoffman v. Doe . . . we need not address the issue of the continued viability of the narrow construction that was given to the statutory language in that case."* (Second emphasis supplied.) *Maxwell,* supra at 547-548.

(d) Moreover, we note that in this case appellant/claimant could have based her pleading averment as to the existence of a phantom driver on more than mere conjecture; in addition to eyewitness corroboration, a claimant's description of a phantom vehicle situation can be supported by other than direct testimony, as "the existence of a phantom vehicle may be established by the circumstances, opinion testimony and from 'the jury's common sense. . . .'" *Guest,* supra at 715 (Pope, J., concurring, citing *J. C. Penney Cas. Ins. Co. v. Woodard,* 190 Ga. App. 727 (380 SE2d 282)). In this instance, appellant testified that the truck suddenly skidded into her lane of traffic; it can be reasonably inferred in behalf of the party opposing the motion for summary judgment (appellant) that the truck skidded on the road because it applied its brakes in a sudden emergency. Thus, the truck driver's testimony is supported by some circumstantial evidence, albeit slight. (We agree, however, that the truck driver's testimony about bumping the phantom vehicle and denting his truck's bumper is not independent evidence that any physical contact occurred; for example, neither the bumper nor a photograph thereof was entered in the record in such a manner as to comply with the requirements of OCGA § 9-11-56.)

We conclude appellant/claimant could rely upon the eyewitness testimony alone, or in conjunction with the above-discussed circumstantial evidence, in prosecuting his uninsured motorist claim *under the terms of his insurance contract* with Royal. In doing so, appellant was authorized to plead in the alternative. See *Ditch v. Royal Indem. Co.,* 205 Ga. App. 478 (422 SE2d 868).

(e) However, there remains the question whether appellant effectively pled an uninsured motorist claim by averring a "description . . . of how the occurrence occurred" adequate to satisfy the requirements of OCGA § 33-7-11 (b) (2). We find that she did not. Appellant's amended complaint averred she suffered damage "as a result of a collision between her auto and the curbing when a vehicle driven by an employee of . . . NGR . . . swerved into her lane of traffic . . . causing [her] to take evasive action to avoid a collision with [NGR's] truck. . . . [NGR's] employee *may have swerved* into [appellant's] lane *to avoid a vehicle driven negligently by an unknown third-party driver* as alleged by the driver in the accident report prepared by the

police officer at the scene." Although appellant thereafter prays for relief based either on the negligence of the truck driver, or the negligence of the unknown driver "John Doe," or a combination of the negligence of both, she failed in her amended complaint to provide a statement or descriptive representation of "how the occurrence occurred"; her alternative averment constituted nothing more than a speculative allegation of how the occurrence *may have* occurred; and the speculative nature of this averment is not cured by a subsequent general averment that appellant's negligence was caused by the unspecified negligence of the "John Doe" driver either alone or with the negligence of the truck driver. Accordingly, appellant failed to plead adequately in the alternate an uninsured motorist claim. Cf. *Ditch*, supra (allegation in complaint constituted factual admission denying that acts of John Doe defendant caused the collision; thus pleadings could not contain a viable description of how the accident occurred involving an uninsured motorist). Accordingly, appellant's amended complaint fails to state in the alternative an uninsured motorist claim on which relief can be granted; and as the trial court considered matters outside the pleadings, it could have granted summary judgment to appellee as to this matter (OCGA § 9-11-12 (b)), even if appellant did not move for summary judgment on this ground. Cf. *Golston v. Garigan*, 245 Ga. 450 (1) (265 SE2d 590) (summary judgment can be granted to a non-moving party). We affirm the judgment, as we will not reverse the correct decision of a trial court regardless of the reason given therefor. *National Consultants v. Burt*, 186 Ga. App. 27, 33 (2) (366 SE2d 344); accord *Shapiro v. Lipman*, 259 Ga. 85, 86 (377 SE2d 673).

*Judgment affirmed. Andrews, J., concurs. Beasley, J., concurs in Divisions 1 and 2 and in the judgment.*

DECIDED MARCH 10, 1993 —
RECONSIDERATION DENIED MARCH 24, 1993 

*Michael R. Casper*, for appellant.
*Johnson, Benedict & Davis, Noel H. Benedict, M. Windle Davis, Jr., Savell & Williams, John C. Parker*, for appellee.