A98A0729. LOVELADY et al. v. ALFA MUTUAL INSURANCE COMPANY.

(503 SE2d 349)

BEASLEY, Judge.

On Friday, January 28, 1994, around mid-day, defendant Pinkiney James was driving his employer's tractor-trailer northbound on Interstate 85 in heavy traffic when he swerved and his truck jackknifed and hit the concrete barrier separating the northbound and southbound lanes.

Plaintiffs Joyce and Emmett Lovelady, who were traveling in the second lane to the right of the barrier, collided with the jackknifed truck. They never saw the vehicle of the unidentified driver who allegedly caused James to swerve.

The Loveladys sued James, James's employer, its insurer, and driver John Doe. They also served Alfa Mutual Insurance Company, their uninsured motorist carrier.

Alfa moved for summary judgment on the ground that the Loveladys were unable to describe how the collision occurred with regard to the unknown driver as required by OCGA § 33-7-11 (b) (2). The court granted summary judgment in Alfa's favor. The Loveladys enumerate as error the application of the statute to preclude their uninsured motorist claim. As parties opposing summary judgment, they are given the benefit of all reasonable doubt, and the evidence and all inferences and factual conclusions arising from the evidence is construed most favorably toward them.[1]

Alfa's motion for summary judgment was based solely on the

---

[1] *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988); *Dorsey v. Clark Atlanta Univ.*, 224 Ga. App. 787, 788 (1) (481 SE2d 848) (1997).

application of Georgia law. On appeal Alfa suggests that Georgia law may not apply but cites no Alabama law in support of its position and thus it is not brought to bear on the dispute.

As a matter of Georgia law, an unknown motorist is uninsured and insurers are required to provide coverage for accidents they cause when one of two circumstances is present.[2] Either there must have been "actual physical contact" between the insured's person or property and the vehicle of the unknown owner or operator or "the description by the claimant of how the occurrence occurred is corroborated by an eyewitness to the occurrence other than the claimant."[3] The issue is whether there is any evidence, including reasonable inferences, of the latter in this case. If not, plaintiffs' insurer has shown the absence of an element of plaintiff's case and is entitled to summary judgment.[4]

There is clearly evidence that the negligence of an unknown driver, either alone or in concert with negligence of the tractor-trailer driver James, proximately caused the collision with plaintiff's car. So the requirement for eyewitness testimony is met.[5] The case turns on a construction of the statutory requirement of "the description by the claimant of how the occurrence occurred."

James' testimony by affidavit is that he was driving within the speed limit when, without warning, a white vehicle driven by an unknown person swerved into his lane of travel, causing him to brake and attempt to maneuver the tractor-trailer by steering to the left to avoid hitting the vehicle. The tractor-trailer jackknifed as a result and James lost control, according to him, until the tractor-trailer stopped after striking the median wall. This evidence is corroborated by the deposition testimony of Paul Bland, who was driving a tractor-trailer behind James. He testified that a six-wheeled truck swerved quickly and erratically into James' lane for some unknown reason, close in front of James, and James braked and swerved to the left to avoid colliding with it. The truck did not slow

---

[2] OCGA § 33-7-11 (a) (1) and (b) (2).

[3] OCGA § 33-7-11 (b) (2).

[4] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[5] See, e.g., *State Farm &c. Ins. Co. v. Swetmon*, 228 Ga. App. 538 (492 SE2d 678) (1997) (corroboration to officer from eyewitness); *Meredith v. Nationwide Mut. Fire Ins. Co.*, 215 Ga. App. 286 (450 SE2d 322) (1994) (eyewitness corroboration adequate, need not corroborate every detail of claimant's description); *Universal Security Ins. Co. v. Lowery*, 182 Ga. App. 125 (354 SE2d 840) (1987), aff'd 257 Ga. 363 (359 SE2d 898) (1987) (eyewitness corroboration by another claimant permitted). Cf. *Murphy v. Ga. Gen. Ins. Co.*, 208 Ga. App. 501 (431 SE2d 147) (1993) (no corroborating eyewitness); *State Farm Fire &c. Co. v. Guest*, 203 Ga. App. 711 (417 SE2d 419) (1992) (nonprecedential: one judge focused on the sufficiency of corroborating eyewitness testimony; two judges decided case on alternative basis of actual physical contact); *Scott v. Allstate Ins. Co.*, 200 Ga. App. 296 (407 SE2d 492) (1991) (no eyewitness corroboration of description).

down or stop. James' vehicle jackknifed, kept moving to the left, and bounced off the median wall. Loveladys' car hit it at its wheels and bounced. Up to the time of his deposition, Bland did not talk to James except at the scene.

The claimants described in their complaint the involvement of the unknown vehicle and alleged that the driver "negligently and carelessly changed lanes in front of [James] and left the scene of the subsequent collision." They sought judgment against him as well as against the other defendants. Although neither plaintiff saw the unknown vehicle, one of their theories of recovery is based on the evidence that the incident occurred as a result of the actions of its driver in moving it into the path of James' tractor-trailer. Thus their description of how the occurrence occurred satisfies the statutory provision for uninsured motorist coverage, as their description is corroborated by not one but two eyewitnesses.

In reaching this conclusion we considered the requirement in the context of its history, purpose, and wording. The sentence in the statute which is the focus here was added by the legislature "so as to provide for coverage for accidents caused by unknown motorists where the unknown motorist's vehicle does not physically contact the insured's vehicle."[6] Previously, relief for the injured parties could only be obtained if there was "actual physical contact." The addition is in keeping with the State's public policy of financially protecting innocent motorists from the negligence of those vehicle operators who cause injury or property damage and leave the scene unidentified.[7]

In broadening the scope of coverage, the legislature did not use language indicating that the claimant must be an eyewitness to the unknown vehicle's involvement. It did not designate personal testimony of claimant as the only allowable source of the description required. Nor did it indicate an intent to exclude coverage when there is positive evidence that the unknown operator of a vehicle was at fault. OCGA § 33-7-11 (b) (2) is tailored only to preclude mandated uninsured coverage when it would rest merely on the claimant's own testimony and there was no actual physical contact. The intent is patently to guard against fraudulent claims.[8] The construction reached here harmonizes with the Supreme Court's approach in interpreting OCGA § 33-7-11 (b) (2), which was to broadly construe it so as to include corroboration by an interested, and not solely a disin-

---

[6] Ga. L. 1983, p. 938, § 1. *Atlanta Cas. Ins. Co. v. Crews*, 197 Ga. App. 48, 49 (1) (397 SE2d 466) (1990), which recognized this liberalization of statutorily-required uninsured motorist coverage.

[7] *Hinton v. Interstate Guaranty Ins. Co.*, 267 Ga. 516, 517 (480 SE2d 842) (1997).

[8] See *Atlanta Cas. Ins. Co.*, supra, 197 Ga. App. at 50 (3).

terested, witness.[9]

The infliction of injuries and property damage by drivers who leave without a trace is not a rare event, as demonstrated by the frequency of such cases in this Court. Some of the court's opinions interpret and apply the sentence which governs this case, and none has been cited which militates against our conclusion. As stated previously, "[i]f the General Assembly had intended to require [eyewitness testimony by the claimant], it could have so specified."[10] The description need not be in the claimant's testimony but may also be in the pleadings, as in this case, although merely "filing suit against John Doe does not constitute a 'description by the claimant of how the occurrence occurred.' "[11]

*Atlanta Cas. Ins. Co. v. Crews*, supra, supports the viability of the Loveladys' claim and we use the same dictionary definition of the ordinary common word "description" as used in that case: "A 'description' is 'a statement, account, or picture in words that describes; descriptive representation; the act or method of describing.' "[12] *Crews* held that a "combination" of the plaintiff's pleadings and testimony can provide an adequate "description" of the occurrence "within the meaning of OCGA § 33-7-11 (b) (2)."[13] Applying the Supreme Court's logic in *Universal* and this court's logic in *Hoffman*, the court found "that if the legislature had intended that, as a condition precedent to recovery under an uninsured motorist endorsement, a plaintiff must have been able to tender in open court her own eyewitness testimony establishing the requisite causal connection between the John Doe driver and the accident, 'it could have so specified.' "[14] Thus, as in *Crews*, plaintiffs' assertions of a "phantom" vehicle, corroborated by an eyewitness (in fact two), suffices. See OCGA § 1-3-1 (a) and (b).[15]

One month after the court decided *Crews* it published *Bell v. Coronet Ins. Co.*[16] The plaintiff lost on summary judgment granted to his uninsured motorist insurer because he did not *claim* that the colli-

---

[9] *Universal Security Ins. Co. v. Lowery*, 257 Ga. 363 (359 SE2d 898) (1987).

[10] Id.

[11] *Hoffman v. Doe*, 191 Ga. App. 319, 320 (381 SE2d 546) (1989). What is more, plaintiff Hoffman expressly testified that she did not contend that the collision was caused by an unidentified vehicle. In *Maxwell v. State Farm Mut. Aut. Ins. Co.*, 196 Ga. App. 545, 547 (2) (396 SE2d 291) (1990), the court read *Hoffman* as possibly giving a narrower construction to the statute than reached here but questioned the viability of such a construction if that was what *Hoffman* meant. In *Maxwell*, the insurance policy used different language than does the statute.

[12] Id. at 50 (3).

[13] Id.

[14] Id. at 50.

[15] The court in *Crews* pointed out that in *Hoffman*, the testimony of the plaintiff "tended to repudiate the John Doe averment contained within her pleadings." Id. at 49.

[16] 197 Ga. App. 211 (398 SE2d 242) (1990).

sion was caused by an unknown vehicle. As repeated in *Bell*, " 'the "description" required by the claimant must at least include such an unknown vehicle . . . [and] such description [must] be corroborated *in its material allegation*, i.e., implication of the unidentified vehicle.' "[17] In this instance the Loveladys in their complaint alternatively describe the collision as having been caused by an unknown driver's negligently and carelessly changing lanes in front of James and leaving, and there is independent corroboration of this material allegation. Bell had fallen short by simply naming John Doe as an additional defendant and summarily alleging that his negligence contributed to Bell's injuries; he did not describe how this came about.

*Langford v. Royal Indem. Co.*,[18] a non-precedential case insofar as this issue is concerned, involved application of an insurance policy which employed different language than contained in the statute. It clearly covered instances where a sole eyewitness, not plaintiff, could testify to facts supporting plaintiff's averments in the complaint; corroboration of the nonparty eyewitness was not essential. As specified in *Langford*, that is not to say that the statute by its wording requires plaintiff to have been an eyewitness to the causation by the unidentified driver.[19] Actually, neither the statute nor Langford's policy required a *firsthand* account of the unknown driver's involvement. But the court in *Langford* refused to so state with respect to the statute, being content merely to question a contrary reading of *Hoffman* and the legal validity of such a reading.

*Langford* did recognize that a pleading averment (the word "description" is used alternatively) "can be supported by other than direct testimony, as 'the existence of a phantom vehicle may be established by the circumstances, opinion testimony and from "the jury's common sense. . . ." ' "[20] As in that case, plaintiff Emmett Lovelady testified that the truck suddenly swerved into his lane. Likewise, "it can be reasonably inferred on behalf of the party opposing the motion for summary judgment (appellant) that the truck [swerved] because it applied its brakes in a sudden emergency." Thus, as in *Langford*, the tractor-trailer driver's testimony is supported by some circumstantial evidence, as well as by direct evidence.[21] Whether applying the statutory language or different contract language, circumstantial evidence could not be rejected.[22]

---

[17] Id. at 212-213.
[18] 208 Ga. App. 128 (430 SE2d 98) (1993).
[19] Id. at 132-133.
[20] Id.
[21] Id. at 133.
[22] *Carter v. Bennett*, cited by the insurer, 220 Ga. App. 128 (469 SE2d 279) (1996), is not controlling precedent. Court of Appeals Rule 33 (a).

A fair construction of the statute is that the intent of the legislature is the preclusion of recovery for false claims, and not the refusal of relief to innocent motorists who describe in allegations and are able to prove that they were injured because of the actions of unidentified drivers. Were the latter intent attributed to the legislature, it would mean also that the legislature intended to allow defendants to simply blame an unknown driver for their own actions and thus insulate themselves from liability because the injured party did not see the unknown driver. It would also mean, as noted in *Crews*,[23] that coverage would be arbitrarily precluded for "a victim injured so rapidly or so severely she could not testify as to how the occurrence happened, regardless of the number of competent witnesses available to testify as to the actual involvement of a John Doe driver and his phantom automobile."

*Judgment reversed. Pope, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 26, 1998.

*Bernard L. Hoppenfeld*, for appellants.
*Dennis, Corry & Porter, Raymond J. Kurey, Parkerson, Shelfer & Groff, I. J. Parkerson*, for appellee.