527 S.E.2d 795

**Charles DUNN and Florence Dunn, his wife, Plaintiffs,**

v.

**John DOE, Allstate Insurance Company and Paul Brown, Defendants.**

**No. 26433.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 3, 1999.

Decided Dec. 13, 1999.

---

Scott S. Bass, Esquire, James B. Stoneking, Esquire, Bordas, Bordas & Jividen, Wheeling, West Virginia, Attorneys for Plaintiffs.

Susan R. Snowden, Esquire, Martin & Seibert, Martinsburg, West Virginia, Attorney for Defendants.

JOHNSON, Judge:

This case arises by certified questions from the Circuit Court of Ohio County and presents issues concerning this Court's decision in *Hamric v. Doe*, 201 W.Va. 615, 499 S.E.2d 619 (1997). Modifying our prior law, which permitted recovery of uninsured motorist benefits only when an insured could prove that his/her injuries were the result of actual physical contact with a hit-and-run vehicle, we ruled in *Hamric* that uninsured motorist benefits are recoverable even in the absence of physical contact provided indepen-

dent third-party evidence establishes that direct physical contact would have occurred between the unknown vehicle and the insured but for the evasive action taken by the insured. By order dated September 28, 1998, the circuit court certified the following two questions to this Court:

1. Does the *Hamric* exception to the physical contact requirement for uninsured motorist coverage under W. Va.Code § 33–6–31(e)(iii) (1995) extend to an accident where the insured's vehicle is struck by another insured vehicle whose operator alleges he took evasive action to avoid physical contact with an unknown unidentified vehicle?

2. Is the operator of an insured vehicle which collided with the injured insured's vehicle a disinterested witness whose testimony satisfies the corroborative evidence test to allow the insured's uninsured motorist claim against the unknown unidentified vehicle to proceed[?]

Upon our review of these issues, we determine that the first question should be answered in the affirmative and the second one, in the negative.[1]

I. Factual and Procedural Background

The following facts are relevant to a discussion of the certified questions presented by this case. On December 12, 1995, Charles Dunn was operating a vehicle in Washington County, Pennsylvania, and proceeding in a southbound direction. Mr. Dunn's vehicle was struck when an automobile driven by Michael Mace that was proceeding north crossed the center line. Mr. Mace alleges that a third vehicle (hereinafter referred to as the "John Doe" vehicle), which was traveling in front of Mr. Dunn's vehicle, came across the center line and caused him to veer off the road onto the berm to avoid collision with the John Doe vehicle. Upon reentering his own lane, Mr. Mace claims to have lost control of his vehicle and crossed the center line just before hitting Mr. Dunn's vehicle.

As a result of the accident, Mr. Dunn sustained broken ribs, a pneumothorax, and blood clots in his leg. After initiating suit

---

**1.** The circuit court responded to these questions in inverse fashion; it ruled in the negative on

question one and in the affirmative on question two.

against Mr. Mace in Pennsylvania,[2] Mr. and Mrs. Dunn[3] filed a civil action in West Virginia against Allstate Insurance Company ("Allstate").[4] In the West Virginia proceeding, the Dunns sought payment of uninsured and underinsured motorist benefits on a policy issued to them, as well as damages for statutory bad faith[5] with regard to Allstate's failure to pay benefits on this policy. Allstate then sought a declaratory judgment from the circuit court as to its obligations to pay uninsured and underinsured[6] motorist benefits to the Dunns. After cross-motions for summary judgment were filed, the circuit court certified the above-stated questions to this Court for resolution.

## II. Discussion

### A. Extension of *Hamric v. Doe*

■■■ At issue in *Hamric* was whether a pedestrian who had moved out of the path of a John Doe vehicle to avoid injury could meet the "physical contact" requirement of West Virginia Code § 33–6–31(e)(iii) (Supp.1999)[7] and thereby recover uninsured motorist benefits. Our decision in *Hamric* included a survey of this Court's prior decisions concerning the "physical contact" requirement.

To begin with, we restated our holding in syllabus point seven of *Perkins v. Doe,* 177 W.Va. 84, 350 S.E.2d 711 (1986) that "[t]he uninsured motorist statute, West Virginia Code § 33–6–31 (Supp.1986), is remedial in nature and, therefore, must be construed liberally in order to effect its purpose." Next, we discussed our holding in *State Farm Mutual Automobile Insurance Co. v. Norman,* 191 W.Va. 498, 446 S.E.2d 720 (1994), in which this Court ruled in syllabus point two that "[i]n order to satisfy the 'physical contact' requirement set forth in W.Va.Code § 33–6–31(e)(iii), it is necessary to establish a close and substantial physical nexus between an unidentified hit-and-run vehicle and the insured vehicle."[8] In *Hamric,* we recognized a need to "put flesh on the skeletal bones of *Norman,*" acknowledging that "the specific meaning of the phrase 'close and substantial physical nexus'" remained undeveloped. *Hamric,* 201 W.Va. at 619, 499 S.E.2d at 623.

■■■ Emphasizing our firm commitment to the underlying objective of the "physical contact" requirement—the prevention of

**2.** That civil action has apparently been resolved through settlement.

**3.** Mrs. Dunn asserted a claim for loss of consortium.

**4.** Although the Dunns brought suit against Allstate Insurance Company, Allstate notes that it was Allstate Indemnity Company that issued the policy at issue to the Dunns.

**5.** *See* W. Va.Code § 33–11–4(9) (1996).

**6.** Allstate's objection to payment of underinsured motorist benefits involves a question of stacking. Only the uninsured motorist benefits are at issue in the matter presently before this Court.

**7.** That provision establishes certain procedures necessary to recover uninsured motorist benefits in connection with a hit-and-run driver:

> (e) If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured be unknown, the insured, or someone in his or her behalf, in order for the insured to recover under the uninsured motorist endorsement or provision, shall:
>
> (iii) Upon trial establish that the motor vehicle, which caused the bodily injury or property damage, whose operator is unknown, was a "hit and run" motor vehicle, meaning a motor vehicle which causes damage to the property

of the insured arising out of physical contact of such motor vehicle therewith, or which causes bodily injury to the insured arising out of physical contact of such motor vehicle with the insured or with a motor vehicle which the insured was occupying at the time of the accident. If the owner or operator of any motor vehicle causing bodily injury or property damage be unknown, an action may be instituted against the unknown defendant as "John Doe", in the county in which the accident took place or in any other county in which such action would be proper under the provisions of article one [§ 56–1–1 et seq.], chapter fifty-six of this code; service of process may be made by delivery of a copy of the complaint and summons or other pleadings to the clerk of the court in which the action is brought, and service upon the insurance company issuing the policy shall be made as prescribed by law as though such insurance company were a party defendant. The insurance company shall have the right to file pleadings and take other action allowable by law in the name of John Doe.

W.Va.Code § 33–6–31(e)(iii) (emphasis supplied).

**8.** Applying that holding to the facts, we determined in *Norman* that the "physical contact" requirement was not met where an uninsured vehicle strikes a tire or other immobile object or debris lying in the road. 191 W.Va. at 507, 446 S.E.2d at 729.

fraud or collusion—we adopted the rationale articulated in *Girgis v. State Farm Mutual Automobile Insurance Co.*, 75 Ohio St.3d 302, 662 N.E.2d 280 (1996), and determined that:

> absolute enforcement of the physical contact requirement is contrary to public policy. We believe the physical contact requirement should not bar recovery when there is sufficient independent third-party evidence to conclusively establish that the sequence of events leading to an injury was initially set in motion by an unknown hit-and-run driver or vehicle.

*Hamric*, 201 W.Va. at 620, 499 S.E.2d at 624. Incorporating this policy into our jurisprudence, we held in syllabus points three and four of *Hamric* that:

> A close and substantial physical nexus exists between an unidentified hit-and-run vehicle and the insured for uninsured motorist insurance coverage under W.Va. Code § 33–6–31(e)(iii) when an insured can establish by independent third-party evidence to the satisfaction of the trial judge and the jury, that but for the immediate evasive action of the insured, direct physical contact would have occurred between the unknown vehicle and the victim.

> The "but for" test is satisfied and the uninsured motorist claim can go forward only if the injured insured presents independent third-party testimony by disinterested individuals which clearly shows the negligence of an unidentified vehicle was a proximate cause of the accident.

201 W.Va. at 616, 499 S.E.2d at 620.

Allstate argues that the exception to the "physical contact" rule that was created in *Hamric* is one that must be narrowly construed to only apply when the insured is the entity that took the evasive action necessary to avoid contact with the unidentified car. In contrast to *Hamric* where the evasive action was taken by the insured, Mr. Mace is the person who allegedly took evasive action in the case at bar. There is no dispute concerning the fact that Mr. Dunn never took any evasive action to avoid the accident that occurred. Based on a strict interpretation of *Hamric*, Allstate maintains that the absence of evasive action taken by the insured prevents application of the "physical contact" exception. Allstate contends additionally that the public policy considerations that were present in *Hamric* are noticeably absent in this case. Whereas adherence to the "physical contact" requirement in *Hamric* would have deprived the insured of her only avenue of recovery since her injuries were the result of one unknown hit-and-run vehicle, Mr. Dunn has multiple methods of recovery.[9] Consequently, the public policy considerations that supported the *Hamric* decision are not present in this case.

Responding to Allstate's arguments, Mr. Dunn contends that, rather than being limited to single vehicle accidents, the *Hamric* holding applies whenever a John Doe vehicle initiates an accident sequence. According to Mr. Dunn, whether the insured or another driver had to take evasive action to avoid a collision is irrelevant. Instead of depending on whether evasive action was taken by the insured, the pivotal focus of *Hamric* is whether the negligence of the John Doe driver is a proximate cause of the resulting accident. In support of his position, Mr. Dunn cites the fact that Ohio courts applying *Girgis*, the decision upon which this Court relied in *Hamric*, have extended *Girgis* to factual scenarios where the actions of the John Doe vehicle cause another vehicle to swerve or take evasive action which in turn results in a collision with the insured's vehicle. *See Muncy v. American Select Ins. Co.*, 129 Ohio App.3d 1, 716 N.E.2d 1171 (1998) (reversing grant of summary judgment to insurer, finding genuine issue of material fact as to whether wood pallet in road dropped by John Doe vehicle caused decedent insured to lose control and collide with another vehicle which caused insured's death due to resulting fire); *Kim v. State Farm Mut. Auto., Ins. Co.*, 1996 WL 729876 (Ohio. Ct.App.1996) (reversing grant of summary judgment to insurer, in

---

9. Mr. Dunn has pursued a claim against Mr. Mace and apparently received a settlement in connection with that claim. In addition, Mr. Dunn has already recovered $20,000 from his own underinsured motorist coverage with Allstate and is attempting to stack policy provisions to increase that amount by $40,000.

light of issuance of *Girgis,* where unknown driver allegedly caused driver of vehicle to collide with insured's vehicle); *see also Lovelady v. Alfa Mut. Ins. Co.,* 233 Ga.App. 117, 503 S.E.2d 349 (1998) (applying uninsured motorist statute to accident where John Doe vehicle allegedly caused tractor-trailer driver to swerve and collide with insured's vehicle). As to Allstate's argument that the policy considerations present in *Hamric* are lacking in this case, Mr. Dunn states simply that this Court did not make the absence of a source of recovery the basis for its holding in that case.

After weighing the arguments presented on both sides of this issue, we find the position advocated by Mr. Dunn to be both compelling and persuasive. Although our holding in *Hamric* was stated in terms of the insured taking evasive action to avoid physical contact with the John Doe vehicle, the single vehicular nature of that case readily explains the phraseology employed in that case. While we did not have under consideration facts such as those present in the instant case, there is nothing in the logic employed in *Hamric* which would suggest that we not extend our ruling in that case to cover the scenario presented by this case. The pivotal concern, as correctly identified by Mr. Dunn, is whether the John Doe vehicle sets in motion a sequence of events that is found to have proximately caused the accident for which uninsured motorist benefits are being sought. *See Hamric,* 201 W.Va. at 620, 499 S.E.2d at 624. Accordingly, we extend our holding in syllabus point three of *Hamric v. Doe,* 201 W.Va. 615, 499 S.E.2d 619 (1997), to rule that a close and substantial physical nexus between an unidentified hit-and-run vehicle and the insured vehicle sufficient to fulfill the physical contact requirement of West Virginia Code § 33–6–31(e)(iii) (Supp. 1999) exists when an insured can establish by independent third-party evidence that, as a result of the immediate evasive action of a third-party taken to avoid direct physical contact with an unknown vehicle, contact between the third-party's vehicle and the insured's vehicle resulted.

### B. Corroborative Evidence Test

The second question certified to this Court involves application of what we refer to as the "corroborative evidence" test. *See Hamric,* 201 W.Va. at 620, 499 S.E.2d at 624. Only through the introduction of "independent third-party testimony by disinterested individuals which clearly shows the negligence of an unidentified vehicle was a proximate cause of the accident" can the exception created in *Hamric* be applied. *Id.* This requirement of independent third-party testimony is aimed at eliminating those claims that are fraudulent or collusive in nature. *See id.* at 621, 499 S.E.2d at 625. While we acknowledged the inherent difficulty in stating an all-encompassing definition of what qualifies as independent third-party evidence, we offered the following guidelines in *Hamric:*

> [W]e believe we must be very clear about what is not adequate independent third-party testimony. Testimony by close family members, close personal friends, by those who might share in the award or have a direct pecuniary interest in the outcome of the case, and all others similarly situated is not testimony which is sufficient to allow the claim to proceed. Evidence from these witnesses standing alone is not adequate to meet the corroborative evidence test. This is not to suggest that family members would routinely perjure themselves; we believe most would not. However, if we are going to have a truly effective bright line rule which genuinely eliminates the very real potential for fraud, clear and simple guidelines must be established. We realize that to avoid fraud, the evidence needs to be free of taint or suspicion and be strong and reliable. Accordingly, to insure that this Court is not opening the door to fraud, the corroborative witnesses or other evidence must be absolutely and totally independent and reliable.

201 W.Va. at 620–21, 499 S.E.2d at 624–25.

Allstate argues that the circuit court wrongly determined that Mr. Mace is a disinterested witness whose testimony satisfies the parameters of *Hamric'*s corroborative evidence test. Mr. Mace, according to Allstate, cannot qualify as an independent third

party since he was a named defendant in a separate action arising from the accident. Allstate suggests that by shifting liability to the unknown Joe Doe driver, Mr. Mace may either reduce or eliminate his liability for the accident. In so doing, Mr. Mace could affect the amount of any excess judgment or even insulate himself from a surcharge with regard to his own automobile insurance premiums. Allstate maintains that Mr. Mace utterly fails to meet the high standard set by this Court in *Hamric* which demands that the testimony of the corroborative witness must be "absolutely and totally independent and reliable." 201 W.Va. at 621, 499 S.E.2d at 625.

Conversely, Mr. Dunn advocates that Mr. Mace is a disinterested witness within the confines of *Hamric*. In support of his position,[10] Mr. Dunn states that Mr. Mace has no direct pecuniary interest in the outcome of this case. Since his insurer is providing a defense, he is not incurring any personal expenses or fees. Any benefit in the way of avoiding an insurance premium surcharge or increase is an indirect benefit that was not addressed by the guidelines delineated in *Hamric*. Finally, Mr. Dunn argues that because his interests are not antagonistic to those of Mr. Mace, there is clearly no incentive for the two of them to engage in collusion.

What Mr. Dunn overlooks in making his arguments is the fact that the corroborative evidence test is aimed at fraud as well as collusion. *See Hamric*, 201 W.Va. at 619–21, 499 S.E.2d at 623–25. Even assuming the veracity of Mr. Dunn's profession of no collusion, Mr. Dunn cannot attest to whether Mr. Mace has made fraudulent statements with regard to the accident. The facts of this case easily demonstrate why a disinterested third-party is required to permit application of the *Hamric* exception. No one but Mr. Mace has testified that a John Doe vehicle crossed the center line and set the events in motion that led to the collision between the Mace and Dunn vehicles. Mr. Dunn testified that he did not believe that there was any other vehicle involved in the accident and that a John Doe vehicle was not a proximate cause of the accident. Although he was aware that there was a blue pickup truck[11] ahead of him, Mr. Dunn testified that he did not observe the truck weaving, entering the oncoming lane of traffic in which Mr. Mace was driving, or causing Mr. Mace to lose control of his vehicle. Mr. Dunn testified that Mr. Mace's version of the facts did not make any sense to him. The investigating officer, Trooper Reda, found Mr. Mace's claim of a John Doe vehicle suspect. When deposed, Trooper Reda stated that he believed Mr. Mace had not properly maintained control of his vehicle under the road conditions. Trooper Reda also observed that there was no independent evidence to substantiate Mr. Mace's allegations regarding the John Doe vehicle and concluded that the John Doe vehicle did not play a part in the accident.

We were clear in *Hamric* that "[i]t would be impossible to say in advance what might constitute sufficient corroborative evidence in a given case." 201 W.Va. at 620, 499 S.E.2d at 624. Thus, the fact that Mr. Mace may not fit squarely into one of the designated categories of individuals who does not qualify as a disinterested third-party is not dispositive of the issue. Only when the facts of a given case are closely scrutinized, can a determination be made as to whether the witness can qualify as both independent and disinterested. Upon careful consideration of the facts of this case, we cannot conclude that Mr. Mace fits the definition of a disinterested, independent third-party witness within the meaning of *Hamric*. Simply put, Mr. Mace's role in the accident prevents us from viewing him as a witness capable of proffer-

---

**10.** The only case cited by Mr. Dunn to support his position that Mr. Mace is a disinterested individual is clearly distinguishable. *See Universal Security Ins. Co. v. Lowery*, 182 Ga.App. 125, 354 S.E.2d 840, *aff'd*, 257 Ga. 363, 359 S.E.2d 898 (1987). The *Lowery* decision, which upheld the corroboration by a driver of a guest passenger's claim for uninsured motorist benefits, was decided under a Georgia statute that only re-

quires corroboration by an eyewitness. *See id.*, 359 S.E.2d at 899 (rejecting contention that corroboration required under statute is corroboration by a disinterested third party where statute refers only to "eyewitness").

**11.** Mr. Mace described the vehicle as a blue Blazer or Bronco.

ing evidence that is simultaneously "free of taint or suspicion" and "strong and reliable." *Id.* at 621, 499 S.E.2d at 625.

Having answered the questions certified to this Court, this action is hereby dismissed from the docket of this Court.

Certified questions answered.

Justice SCOTT did not participate in the decision of the Court.