# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2024 Term

_____

No. 23-ICA-338

_____

FILED

**October 16, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

SHAUN and JENNIFER LOPEZ, individually, and as Next Friends and Legal Guardians
of S.L., G.L., and J.L., minors; and
KEITH and MELISSA CHAPMAN, individually, and as Next Friends and Legal
Guardians of H.C., a minor,
Plaintiffs Below, Petitioners,

v.

ERIE INSURANCE,
Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Joanna Tabit, Judge
Civil Action No. 21-C-827

AFFIRMED
_____

Submitted:  September 4, 2024
Filed:  October 16, 2024

JB Akers, Esq.
Akers Law Offices, PLLC
Charleston, West Virginia
Counsel for Petitioners Shaun and
Jennifer Lopez, et al. and Keith and
Melissa Chapman, et al.

Matthew J. Perry, Esq.
Jill E. Lansden, Esq.
Burns White, LLC
Huntington, West Virginia
Counsel for Respondent Erie
Insurance Property & Casualty Co.

CHIEF JUDGE SCARR delivered the Opinion of the Court.

SCARR, CHIEF JUDGE:

The petitioners, Shaun and Jennifer Lopez, and Keith and Melissa Chapman ("Petitioners"), appeal the Order Granting Summary Judgment entered by the Circuit Court of Kanawha County on June 29, 2023.[1] Petitioners contend that the circuit court erred in applying contractual terms from the insurance policy's general definitions section to the uninsured and underinsured motorists endorsement.[2] According to Petitioners, the uninsured and underinsured motorists endorsement should solely govern in this case, and the language therein provides coverage for their injuries. The circuit court disagreed with Petitioners and granted summary judgment in favor of the respondent, Erie Insurance Property and Casualty Company ("Erie" or "Respondent").

Having reviewed the parties' arguments, the record on appeal, oral argument, and the controlling law, we affirm the circuit court's June 29, 2023, order. The insurance policy's uninsured and underinsured motorists endorsement unambiguously refers to the general policy definition terms that the circuit court applied. Applying those terms, we find

---

[1] In the notice of appeal, Petitioners indicated that Amy Reynolds, another plaintiff in the action below, was joining in this appeal. Petitioners also named Horace Mann Insurance Company, another defendant below, as a respondent. However, neither party participated in the briefing of this matter. In its April 17, 2024, order setting this matter for oral argument, the Court amended the case style of this appeal to omit those non-participating parties.

[2] An insurance policy "endorsement" or "rider" is an amendment or addendum to the policy that modifies the policy's coverage. Mila Araujo, *What Is an Insurance Endorsement?*, THE BALANCE (May 4, 2022), https://www.thebalancemoney.com/insurance-endorsement-or-rider-2645729.

1

that the vehicle at issue here does not meet the specific definitions required for uninsured and underinsured motorists coverage, as plainly set forth by the insurance policy. Accordingly, there is no genuine issue of material fact and summary judgment was correctly granted in favor of Respondent.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioners are the parents of children who were injured in a motor vehicle crash during a Veterans Day parade, held on November 2, 2019, in St. Albans, West Virginia. The children were passengers on a parade float constructed on a trailer that was being pulled behind a Ford F-150 pickup truck owned and operated by Greg Cox. The truck was insured by Erie under Policy Number Q11-6705664 ("Erie Policy"), with an effective policy period of November 17, 2018, to November 17, 2019. The crash occurred when a 2007 Yamaha Rhino utility-terrain vehicle ("UTV" or "Rhino") owned and operated by John Kidd unexpectedly accelerated and struck the ramp on the trailer, which subsequently collapsed. Mr. Kidd's UTV drove up on the back of the trailer, striking five children who were riding on the trailer. Three of the children were transported to Charleston Area Medical Center by ambulance for medical treatment. Two of the children were treated at the scene. The State of West Virginia Uniform Traffic Crash Report prepared as a result of the underlying accident classified the Rhino as a UTV and indicated that it was not registered through the West Virginia Division of Motor Vehicles, with the Registration Status identified as "No Registration Required."

2

Petitioners settled with Mr. Kidd's liability insurer, Foremost Insurance Company. The Foremost policy provided liability coverage in the amount of $50,000, which was insufficient to compensate the multiple injured parties. Accordingly, Petitioners made a claim for uninsured/underinsured motorists ("UIM") benefits under Mr. Cox's Erie Policy on October 22, 2020. The Erie Policy includes UIM bodily injury limits of $100,000 per person and $300,000 per accident.

On November 2, 2020, Erie denied coverage for the Petitioners' UIM claims by finding that Mr. Kidd's UTV did not qualify as a "motor vehicle" as defined under the Erie Policy. Petitioners thereafter filed the declaratory action below.[3] Erie filed a motion for summary judgment on February 27, 2023. On June 29, 2023, the circuit court ruled in Erie's favor by finding that the UTV did not meet the definition of a "motor vehicle" under

---

[3] On September 17, 2021, the *Reynolds* action was filed in the Circuit Court of Kanawha County seeking declaratory relief and the payment of UIM coverage under the Erie Policy. On November 1, 2021, the *Lopez* action and the *Chapman* action were filed in the Circuit Court of Kanawha County, including similar claims for declaratory relief and the payment of UIM Coverage under the Erie Policy. The circuit court consolidated these matters by *Agreed Order Granting Motion to Consolidate entered December 22, 2021*.

the Erie Policy and thus ruled that coverage was excluded, dismissing Erie from the case with prejudice.[4] It is from that order that Petitioners now appeal.[5]

## II. RELEVANT POLICY LANGUAGE

The Erie Policy at issue contains an Uninsured/Underinsured Motorists Coverage Endorsement – West Virginia Form (AFWU01 (Ed. 11/17) UF-8811) ("UIM Endorsement"), which provides as follows:

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

**UNINSURED/UNDERINSURED MOTORISTS**
**COVERAGE ENDORSEMENT – WEST VIRGINIA**

---

[4] This order did not resolve the case below as to all issues and all parties. Nor was the order expressly certified as final pursuant to Rule 54(b) of the Rules of Appellate Procedure. However, the Supreme Court of Appeals of West Virginia has held that:

> Where an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that "no just reason for delay" exists and "direct[ing]…entry of judgment" will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect.

Syl. Pt. 2, *Durm v. Heck's, Inc.*, 184 W. Va. 562, 401 S.E.2d 908 (1991). In the order on appeal, the circuit court granted summary judgment as to Erie and dismissed it as a party to the matter below. Accordingly, the circuit court's order approximates a final order in nature and effect. Therefore, this Court has jurisdiction over this appeal under W. Va. Code § 51-11-4(b)(1) (2024).

[5] This Court held Rule 19 oral argument in this case on September 4, 2024.

4

*This endorsement contains provisions applicable to Uninsured/Underinsured Motorists Bodily Injury and Property Damage Coverage and changes provisions contained in your policy to the extent that the provisions in this endorsement are different from those in your policy.*

**OUR PROMISE**

"**We**" will pay damages for bodily injury and property damage that the law entitles **"anyone we protect"** or the legal representative of **"anyone we protect"** to recover from the owner or operator of an "**uninsured motor vehicle**." If Underinsured Motorists Coverage is indicated on the "**Declarations**," "**we**" will pay damages for bodily injury and property damage that the law entitles "**anyone we protect**" or the legal representative of "**anyone we protect**" from the owner or operator of an "**underinsured motor vehicle**."

Damages must result from a motor vehicle accident arising out of the ownership or use of the "**uninsured motor vehicle**" or "**underinsured motor vehicle**" as a motor vehicle and involve:

1. bodily injury to "**anyone we protect**." Bodily injury means physical harm, sickness, disease or resultant death to a person; or
2. property damage, meaning destruction of or injury to:

   a. an "**owned auto we insure**" and property owned by "**anyone we protect**" while contained in such **"auto;"**
   b. property owned by "**you**" or a "**relative**" while contained in any "**auto we insure**" under this coverage; and
   c. any other property, except a "**motor vehicle**," owned by "**anyone we protect**" and located in West Virginia.

If loss results in an Uninsured or Underinsured Motorists Property Damage claim, "**we**" will pay "**you**" the greater of the fair market rental value of a like kind replacement vehicle or the amount to which you are entitled under Transportation Expenses Coverage, if purchased.

"**We**" will not be bound by a judgment against the owner or operator of the "**uninsured motor vehicle**" or "**underinsured**

5

**motor vehicle**" on issues of liability or amount of damages unless it is obtained with "**our**" written consent.

Terms are defined in the UM/UIM Endorsement of the Erie Policy as follows:

**DEFINITIONS**

*Words and phrases in bold type and quotations are used as defined in this endorsement. If a word or phrase in bold type and quotations is not defined in this endorsement, then the word or phrase is defined in the GENERAL POLICY DEFINITIONS section of the policy.*

"**Underinsured motor vehicle**" means a "**motor vehicle**" for which the limits of available liability bonds or insurance or self-insurance at the time of the accident are insufficient to pay losses and damages.

"**Underinsured motor vehicle**" does not include:

1. "**motor vehicles**" insured for Liability Protection under this policy;
2. "**motor vehicles**" owned or leased by any governmental unit or agency;
3. "**motor vehicles**" designed for use mainly off public roads while not on public roads; or
4. "**motor vehicles**" owned, leased or rented by, furnished to or available for the use of **"you"** or a **"relative."**

A "motor vehicle" is a defined term in the General Policy Definitions in the Erie Policy

and is defined as follows:

"**Motor vehicle**" means any vehicle that is self-propelled and is required to be registered under the laws of the state in which "**you**" reside at the time this policy is issued. "**Motor vehicle**" does not include a vehicle:

1. propelled solely by human power;
2. propelled by electric power obtained from overhead wires;
3. operated on rails or crawler treads;
4. located for use as a residence or premises; or

5. which is a lawn and garden tractor or mower or similar vehicle.

## III. STANDARD OF REVIEW

Our standard of review as to Petitioners' claims is well settled. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). "It is the province of the court, and not of the jury, to interpret a written contract." Syl. Pt. 1, *Stephens v. Bartlett*, 118 W. Va. 421, 191 S.E. 550 (1937). Under West Virginia law, the interpretation of a contract is a legal question freely reviewable on appeal. *IPI, Inc. v. Axiall Corp.*, 249 W. Va. 544, 552, 897 S.E.2d 572, 580 (Ct. App. 2024). With this plenary standard in mind, we address the parties' arguments.

## IV. DISCUSSION

The primary issue in this case is whether, under the Erie Policy, a UTV being driven on a closed-off section of roadway in a parade is an "underinsured motor vehicle" as defined by the policy's UIM Endorsement if it does not meet the general definition of "motor vehicle" in the same policy. As a matter of contractual interpretation, to make this determination we first analyze the contract's language. Our rule is that language in an insurance policy should be given its plain, ordinary meaning. Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.*, 176 W. Va. 430, 345 S.E.2d 33 (1986). Where the provisions of an insurance policy are clear and unambiguous, they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended by the parties. Syl. Pt. 1, *Christopher v. United States Life Ins.*, 145 W. Va. 707, 116 S.E.2d 864 (1960).

7

When a court interprets a contract, it reads it as a whole, with all policy provisions given effect. *Soliva*, 176 W. Va. at 432, 345 S.E.2d at 35. "In ascertaining the intention of the parties to an insurance contract, the test is what a reasonable person in the insured's position would have understood the words of the policy to mean." *Id.*, at Syl. Pt. 4.

As noted above, the relevant language of the UIM Endorsement of the Erie Policy states in its "definitions" section that "[w]ords and phrases in bold type and quotations are used as defined in this endorsement. If a word or phrase in bold type and quotations is not defined in this endorsement, then the word or phrase is defined in the GENERAL POLICY DEFINITIONS section of the policy." Clearly, if a word or phrase in the UIM Endorsement is written in quotations and bolded, it refers to the specific contractual definition provided in the UIM Endorsement or in the General Policy Definitions section of the Erie Policy (if left undefined by the UIM Endorsement). The UIM Endorsement states that Erie will pay for damages recoverable against the owner or operator of an "underinsured motor vehicle," a term which is written in quotations and bolded. Thus, "underinsured motor vehicle" is a term which has a specific contractual definition.

The definitions section of the UIM Endorsement provides the specific contractual definition of "underinsured motor vehicle," which is "a 'motor vehicle' for which the limits of available liability bonds or insurance or self-insurance at the time of the accident are insufficient to pay losses and damages." It must be noted that within the

8

UIM Endorsement, the term "motor vehicle" is written in quotations and bolded, denoting that it also has a specific contractual definition. The "underinsured motor vehicle" definition also provides a list of "motor vehicles" specifically excluded from the contractual definition. The exclusions read as follows:

- "motor vehicles" insured for Liability Protection under this policy;
- "motor vehicles" owned or leased by any governmental unit or agency;
- "motor vehicles" designed for use mainly off public roads while not on public roads; or
- "motor vehicles" owned, leased or rented by, furnished to or available for the use of "you" or a "relative."

Each exclusion category is predicated upon the subject of the exclusion being a "motor vehicle," which is written in quotations and bolded. Each and every exclusion for "underinsured motor vehicle" begins with an explicit reference to a "motor vehicle," which is modified in some way. Indeed, one could properly consider an "underinsured motor vehicle" as a subcategory of the general term "motor vehicle." Therefore, to properly decide whether the UIM Endorsement applies to the UTV in this case as an "underinsured motor vehicle," we must determine whether the UTV is a "motor vehicle" under the Erie Policy. As a term written in quotations and bolded throughout the UIM Endorsement, we find that the specific contractual definition of "motor vehicle" controls. Because the term "motor vehicle" is not specifically defined in the UIM Endorsement, we must look to the general policy definitions section of the Erie Policy for its definition.

In the Erie Policy's general policy definitions, "motor vehicle" is defined as "any vehicle that is self-propelled and is *required* to be registered under the laws of the state in which 'you' reside at the time this policy is issued." (Emphasis added.) Clearly, to qualify as a "motor vehicle" under the Erie Policy's contractual definition, a vehicle must be both self-propelled and required by law to be registered in the state of the insured. Because the specific contractual definition of "underinsured motor vehicle" in the Erie Policy requires the vehicle to be a "motor vehicle," if the vehicle does not meet either of the two prongs of the "motor vehicle" definition, it cannot be an "underinsured motor vehicle" under the UIM Endorsement.

However, Petitioners contend that we should not look to the Erie Policy's general definitions because this situation is governed only by the UIM Endorsement. Petitioners claim that the UIM Endorsement provides a definition for an "underinsured motor vehicle," which should be read and applied as a standalone controlling definition. Petitioners also argue that the general definitions section only applies to normal liability coverage and is inapplicable here because of the distinct nature and purpose of underinsured and uninsured motorists coverage. It is Petitioners' position that a vehicle does not have to qualify as a general definition "motor vehicle" to be covered as an "underinsured motor vehicle" by the Erie Policy's UIM Endorsement. Although Petitioners correctly identify the profound differences between general liability and underinsured

motorists coverage,[6] we must ultimately disagree with their argument that the Erie Policy's UIM Endorsement must be read in isolation.

It is well-settled that contracts should be read as a whole, with all the policy provisions given effect. *See Soliva*, 176 W. Va. at 432, 345 S.E.2d at 35. Indeed, the Supreme Court of Appeals of West Virginia ("SCAWV") warned against arguments based upon piecemeal, out of context interpretations of contract sections. *See id.* Thus, we cannot interpret and apply the UIM Endorsement as argued by Petitioners. We fail to see why the different purpose of general liability and underinsured motorists insurance alone would cause the "general definitions" portion of the Erie Policy, which was referenced throughout the policy, to be inapplicable to the UIM Endorsement. Further, this holistic interpretation is impossible to ignore when the Erie Policy's UIM Endorsement specifically references the general definition section, stating that "[i]f a word or phrase in bold type and quotations is not defined in this endorsement, then the word or phrase is defined in the **GENERAL POLICY DEFINITIONS** section of the policy." (emphasis added). The UIM

_____

[6] The fundamental difference between general liability and underinsured motorists coverage is that general liability protects the insured when they are the tortfeasor, while underinsured and uninsured motorists coverage protects the insured when they are caused injury by a tortfeasor who lacks their own general liability insurance. Syl. Pt. 4, *Alexander v. State Auto. Mut. Ins. Co.*, 187 W. Va. 72, 415 S.E.2d 618 (1992). "The primary, if not sole purpose of mandatory uninsured motorist coverage is to protect innocent victims from the hardships caused by negligent, financially irresponsible drivers." *Perkins v. Doe*, 177 W.Va. 84, 87, 350 S.E.2d 711, 714 (1986) (citations omitted). "Liability insurance is intended to compensate an injured guest passenger for any negligence on the part of the driver/insured." *Alexander*, 187 W. Va. 72, 415 S.E.2d 618, at Syl. Pt. 4.

Endorsement explicitly states that the general policy definitions control for terms with specific contractual definitions left undefined by the UIM Endorsement. Therefore, we find that to be considered an "underinsured motor vehicle" pursuant to the UIM Endorsement, a vehicle must first be considered a "motor vehicle" under the Erie Policy's general definitions section.

Petitioners also argue that the Erie Policy is ambiguous, and thus must be interpreted in favor of finding coverage. The SCAWV has held that where the policy's terms are found to be ambiguous, the ambiguities are strictly construed against the insurance company and all doubts are resolved in favor of coverage. *See* Syl. Pt. 3, *Murray v. State Farm Fire & Cas. Co.*, 203 W. Va. 477, 509 S.E.2d 1 (1998). "Whenever the language of an insurance policy provision is reasonably susceptible to two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." *Soliva*, 176 W. Va. 430, 345 S.E.2d 33, at Syl. Pt. 2. Under West Virginia law, "[t]he term 'ambiguity' is defined as language 'reasonably susceptible of two different meanings' or language 'of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning.'" *Payne v. Weston*, 195 W. Va. 502, 507, 466 S.E.2d 161, 166 (1995). Ambiguity can be patent, wherein the doubtful meaning is facially apparent, or latent "which arises not upon the words of the instrument, as looked at in themselves, but upon those words when applied to the object sought to be accomplished by the contract or the subject which they describe." *Paxton v. Benedum-Trees Oil Co.*, 80 W. Va. 187, 188, 94 S.E. 472, 473 (1917).

12

Petitioners claim that the Erie Policy is ambiguous because the UIM Endorsement's "underinsured motor vehicle" definition specifically excludes "'motor vehicles' designed for use mainly off public roads while not on public roads[.]" Because this exclusion applies to "motor vehicles" designed for off-road use "while not on public roads," Petitioners contend that the UIM Endorsement is ambiguous as to whether a "motor vehicle" designed for off-road use is included in the "underinsured motor vehicle" definition when it is driven on public roads. We agree and acknowledge that the "underinsured motor vehicle" definition in the Erie Policy is silent as to whether it includes an off-roading "motor vehicle" being driven on a public road, and thus, the "underinsured motor vehicle" definition could arguably be found to be ambiguous.

However, we do not believe this case implicates any ambiguities that may arise out of the "underinsured motor vehicle" definition. Although the UIM Endorsement might be ambiguous as to whether off-roading "motor vehicles" are "underinsured motor vehicles," it is clear and unambiguous that any "underinsured motor vehicle" must qualify as a "motor vehicle" under the Erie Policy. The general definition of an "underinsured motor vehicle" within the Erie Policy and its enumerated exclusions all start with the subject being a "motor vehicle" in bold type and quotations. To explore potential ambiguities in the UIM Endorsement term "underinsured motor vehicle" without referring to the included "motor vehicle" contractual definition is to arbitrarily segregate the UIM Endorsement from the rest of the Erie Policy. Such a piecemeal analysis runs counter to

13

well-settled principles of West Virginia law. "If [an insurance] policy as a whole is unambiguous then the insured will not be allowed to create an ambiguity out of sections taken out of context." *Soliva*, 176 W. Va. at 432, 345 S.E.2d at 35. Thus, to whatever extent any ambiguity exists in the UIM Endorsement regarding whether an off-road "motor vehicle" is an "underinsured motor vehicle," it is only applicable if the subject is a "motor vehicle" under the Erie Policy.

Regardless of this potential ambiguity, coverage as an "underinsured motor vehicle" can only apply to the UTV here if it is a "motor vehicle" as defined by the general definitions section of the Erie Policy. "Motor vehicle" is defined in the Erie Policy as "any vehicle that is self-propelled and is required to be registered under the laws of the state in which 'you' reside at the time this policy is issued." So, to qualify as a "motor vehicle" under the Erie Policy, a vehicle must be both self-propelled and required by law to be registered in the state of the insured. The self-propelled nature of the UTV here is not disputed by either party, nor does anything in the record call the UTV's ability to self-propel into question. Indeed, the sudden acceleration of the UTV into the parade float was clear evidence of its self-propulsion.

However, it is undisputed that the UTV here does not meet the second prong of the Erie Policy's "motor vehicle" definition, the legal requirement that the vehicle be registered. Here, the insured, Greg Cox, resides in Saint Albans, West Virginia, and the policy's date of issuance is November 17, 2018, the first date of the effective policy period.

14

Thus, the applicable law is that of West Virginia as of November 17, 2018. The registry requirements for vehicles such as UTVs are governed by section 17A-3-2 of the West Virginia Code. The general rule provides that "[e]very motor vehicle, trailer, semitrailer, pole trailer and recreational vehicle when driven or moved upon a highway" is subject to registration. W. Va. Code § 17A-3-2(a) (2010). However, UTVs and some other "recreational vehicles" are specifically listed as "exempt from the requirements of annual registration, license plates and fees, unless otherwise specified by law." *Id.* at § 17A-3-2(a)(6) (2010).[7] The circuit court cited the State of West Virginia Uniform Traffic Crash Report, which indicated that the UTV was not registered and concluded that the UTV was not required to be registered under West Virginia Code § 17A-3-2. Although Petitioners suggest that the UTV "could have been registered," they do not contend or point to any evidence in the record indicating that the UTV was required to be registered under West Virginia law. Because it is undisputed that the UTV here was not required to be registered under West Virginia law at the time of the Erie Policy's issuance, we conclude that it is not a "motor vehicle" as defined by the Erie Policy.

It should be noted that in 2020, legislation was enacted that allows the use of "street-legal special purpose vehicles" on public roads. W. Va. Code § 17A-13-1(a) (2020).

---

[7] UTVs are statutorily defined as "any motor vehicle with four or more low-pressure or nonhighway tires designed for off-highway use and is greater than fifty inches in width." W. Va. Code § 17A-1-1(vv) (2014). Although the parties did not present evidence regarding the physical features of the Rhino at issue here, the parties did not dispute or raise any arguments regarding its status as a UTV.

UTVs are included in the categories of "special purpose vehicles" that can be "street-legal," subject to various requirements and restrictions. *Id.* at § 17A-13-1(b). "Street-legal special purpose vehicles" may be registered with the State, but their registration is not required by law. *Id.* at § 17A-13-1(g). Section 17A-13-1 does not change our analysis regarding whether the UTV here is a "motor vehicle" under the Erie Policy for two reasons. First, § 17A-13-1(g)'s registration is optional, as opposed to the "required" registry described by the Erie Policy's "motor vehicle" definition. Second, § 17A-13-1 took effect in 2020, after the underlying facts of this case had occurred. "Typically, the law that is in effect at the time a contract is executed is the law that thereafter applies to and governs the parties' agreement." *Cabot Oil & Gas Corp. v. Huffman*, 227 W. Va. 109, 118, 705 S.E.2d 806, 815 (2010). In other words, "[t]he laws which subsist at the time and place where a contract is made and to be performed enter into and become a part of it to the same extent and effect as if they were expressly incorporated in its terms." *Id.*; Syl., *Franklin Sugar Ref. Co. v. Martin–Nelly Grocery Co.*, 94 W.Va. 504, 119 S.E. 473 (1923). West Virginia Code § 17A-13-1 is inapplicable to this case because the law that was in effect at the time of the Erie Policy's issuance, November 17, 2018, governs.

An ancillary issue we must address is whether the Erie Policy's underinsured motorists coverage conflicts with the spirit and intent of the West Virginia uninsured and

16

underinsured motorists statutes.[8] "Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." Syl. Pt. 3, *Deel v. Sweeney*, 181 W. Va. 460, 383 S.E.2d 92 (1989). Insurance contracts cannot alter statutory provisions, and if a provision of an insurance policy is more restrictive than statute, it is void. *Id.* at 462, 383 S.E.2d at 94. The statutory requirements for insurance policies regarding uninsured and underinsured motorists coverage are found in West Virginia Code § 33-6-31(b). That statute mandates that insurance policies provide uninsured motorists insurance up to the limits specified by West Virginia Code § 17D-4-2, and that they offer optional underinsured motorists coverage up to the policy's general liability limits. W. Va. Code § 33-6-31(b) (2015).

"The uninsured motorist statute, West Virginia Code § 33-6-31 (Supp.1986), is remedial in nature and, therefore, must be construed liberally in order to effect its purpose." Syl. Pt. 7, *Perkins v. Doe*, 177 W.Va. 84, 350 S.E.2d 711 (1986). However, despite this remedial nature, our precedent recognizes important differences between the mandatory uninsured motorists insurance and the optional underinsured motorists insurance. *See Deel v. Sweeney*, 181 W. Va. 460, 463, 383 S.E.2d 92, 95 (1989). From a

---

[8] West Virginia's uninsured and underinsured motorists laws are provided by West Virginia Code § 33-6-31(b) (2015).

policy perspective, the State has an interest in assuring that every citizen is protected from the risk of loss caused by uninsured motorists, while the purpose of the optional underinsured motorists coverage is to "enable the insured to protect himself, if he chooses to do so, against losses occasioned by the negligence of other drivers who are underinsured." *Id.* at 463, 383 S.E.2d at 95. Therefore, coverage for underinsured motorists insurance can be lawfully limited (so long as the premium charged is consistent therewith) to a greater degree than uninsured motorists insurance. *See id.*

Even in the more liberally construed context of uninsured motorists coverage, our precedent has held that an insurance policy may lawfully exclude coverage from vehicles that are excepted from West Virginia Code § 17A-3-2's registration and licensing requirements. *See Boniey v. Kuchinski*, 223 W. Va. 486, 492, 677 S.E.2d 922, 928 (2009). Such an exclusion does not conflict with West Virginia Code § 33-6-31(b) because mandatory uninsured motorists coverage is meant to protect drivers from injury caused by those who have failed to acquire the liability insurance required for licensing and registering a vehicle. *Id.* Vehicles excepted from registration and licensing are similarly excepted from mandatory liability insurance. Consequently, it would not further the purpose of West Virginia Code § 33-6-31(b) to require uninsured motorists coverage for vehicles excepted from West Virginia Code § 17A-3-2's registration and licensing requirements. *Id.* Similarly, mandatory vehicle liability insurance was meant to protect

18

members of the public utilizing public highways, so West Virginia Code § 33-6-31(b)'s purpose is not furthered by imposing uninsured motorists coverage for off-road vehicles.[9]

In this case, we have a claim for underinsured motorists coverage for injuries caused by an off-roading vehicle not subject to West Virginia Code § 17A-3-2's registration and licensing requirements. Although the vehicle was being driven on a public road, the road had been closed off to regular traffic for a parade, making the setting more akin to a vehicle being driven off-road. As noted above, insurance policies have greater leeway to limit coverage for the optional underinsured motorists insurance than the mandatory uninsured motorists insurance. Further, because the UTV was not legally required to be registered (and thus be insured) and was being driven on a road that was closed off to normal traffic, we believe that the denial of underinsured motorists coverage does not conflict with West Virginia Code § 33-6-31(b).

## V. CONCLUSION

For the foregoing reasons, the circuit court's June 29, 2023, order granting summary judgment is affirmed.

Affirmed.

---

[9] Although there may arguably be some inconsistency regarding the scope and purpose of our uninsured and underinsured motorist insurance since West Virginia Code § 17A-13-1 began permitting off-road vehicles to be driven on public roads, our precedent as it stands provides clear guidance here. *See Boniey*, 223 W. Va. at 492, 677 S.E.2d at 928.

19